**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TAPIWA MUSONZA** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>)<br>**OFFICER COSTANZO, et al.** )<br><br>**Defendant.** ) | **Civil Action No. 1:19-cv-02779 (TSC)** |

**NOTICE OF DISCOVERY DISPUTE**

**A. Introduction/Summary**

**Defendants' Statement:**

   Plaintiff Tapiwa Musonza has filed a Complaint against MTPD Officers Costanzo and
Ditrick. His Complaint contains allegations of unlawful seizure and excessive force under 42
U.S.C. Section 1983, arising out of an incident that occurred on July 22, 2019 at the U Street-
Cardozo Metrorail station. His Complaint also alleges common law counts of assault and battery,
unlawful arrest and malicious prosecution.

   Defendants' have raised several issues regarding the discovery Plaintiff served upon them.
They assert that the number of interrogatories served on them exceed 25 because of the various
subparts Plaintiff has included in his interrogatories.[1]  Defendants have also objected to several
interrogatories and requests for productions of documents substantively.  They argue that (a) the
discovery is overbroad, unduly burdensome, and not relevant to the four counts of Plaintiff's
Complaint; (b) the discovery is not proportional to the discovery needs of the case; (c) the
discovery Plaintiff seeks is largely in the control of third parties and not defendants; and (d) the
information Plaintiff seeks, which is in the custody of third parties, is protected under the self-
evaluative privilege and protected critical infrastructure information ("PCII") and/or sensitive
security information ("SSI").

---

[1] This objection, which Defendants raised for Interrogatory Nos. 22 and 20, has been resolved by the Court's ruling
that all discovery requests involving race and/or personal identifiers are quashed.  The removal of those subparts
from Plaintiff's interrogatories diminishes the number of interrogatories.  Defendants still maintain, however, that
Interrogatories 1, 3, 4, 5, 6, 12, and 16 count as more than one interrogatory each.  The objection is moot currently.

**Plaintiff's Statement:**

Plaintiff has raised two challenges to Defendants' Responses to Plaintiff's Rule 34 Requests to which Defendants have not responded: **(1)** Defendants have NOT produced the training and disciplinary information for each officer.  Without the pertinent information, Plaintiff is unable to designate a use of force expert; What is more, the manner of production is sanctionable.  For example, Defendants produced 43 pages of a training file for Officer Costanzo and have redacted all of the information including questions that he was asked on a juvenile law exam (bates 117-121); they did not produce any curriculum, course materials or examinations from his criminal law class although there is proof that he took the class; they did not produce any curriculum or related materials to the full range of courses he took in the police academy so Plaintiff has no way of knowing what classes he took related to use of force, tasers and proper arrest and handcuffing methods;[2] and **(2)** the training records provided for Officer Ditrick consist of only 14 pages (far less than Costanzo) of certificates of completion and few other pertinent documents. Nothing pertains to the full scope of training that MTPD officers receive, much less any relevant training. According to Defendants, MTPD Officers "*are trained across many areas of subjects during their basic training, which is at least 1000 hours and includes…subjects as citation and report writing; weapon care… how to coordinate police investigations on the Metrorail tracks which are electrified, etc….*"  The records Defendants produced for Ditrick consist of 14 pages of certificates referencing course numbers and titles that do not describe the contents of the training or curriculum. Plaintiff is seeking the curriculum for the Taser Course(s) and all curriculum and course work related to the official use of force continuum under which these officers are trained.[3]

**Defendant's Reply to Plaintiff's Statement:**

Plaintiff, in his introductory statement, raises discovery issues regarding Defendants' discovery production that he has not first attempted to resolve through the meet and confer process.  To the extent he claims that "Plaintiff has raised two challenges" to which Defendants have "not responded," Defendants are at loss to understand.  This "Notice of Discovery Dispute" being filed with this Court is at the behest of Defendants, originating in **Defendants' objections to Plaintiff's discovery requests**.  The objections are several, based upon extremely onerous requests which are not proportional to the discovery needs of the case, as well as other objections based on relevancy and privileges.  Defendants cannot "respond" to an alleged "failure" which is, essentially, Defendants own original objections to Plaintiff's discovery requests.

Plaintiff's first assertion that Defendants have not provided their training files is false.  Both officers have provided Responses to Plaintiff's discovery requests (as well as Amended

---

[2] **Defendants Reply:**  Plaintiff's assertion is misleading.  It gives the impression that Officer Costanza is not disclosing available documents.  Officer Costanza indicated that he produced his redacted training file.  *See* Response No. 20.  (Documents Bates # 117-162).  The file is the file.  Thus, there is nothing more for him to disclose.

[3] **Plaintiff's Statement:** Defendants have withdrawn their objections to several interrogatories but as of the time of Plaintiff's viewing of this document on April 30, 2020 have not provided a date by which they plan to supplement their responses.  **Defendant's Reply:**  Defendants will provide answers to interrogatories on or before May 11, 2020 except that answer to Interrogatory 22 will await the court's ruling on Defendant's objections.

Responses, incorporating the Amended Table of Contents), in which they disclosed their redacted training files kept at WMATA through the Metro Transit Police Department (MTPD).

Some parts of the file, which contain WMATA's proprietary information that is owned and controlled by WMATA, not by Defendants were redacted.   This includes test questions from an exam, and their answers;  WMATA does not release this information to its police officers. Defendants' provided responses to Plaintiff's Requests, such as Request No. 20, for both Officer Costanza (Documents Bates # 117-162) and Officer Ditrick (Documents Bates # 163-177).

Plaintiff claims, contradictorily, that no training files were produced, yet acknowledges that he received 43 pages of training files, of which he complains about the redactions.  Notably, he also complains about redactions on an exam addressing issues of "juvenile law." Plaintiff is not a juvenile.  He makes no effort to explain why the lack of this information is an issue.  He also complains that the answer form from the "Traffic" exam was provided without the questions. Again, he makes no attempt to argue the traffic exam's relevancy.  Moreover, as noted in Defendants objections, certain information such as exam questions and answers, belong to the MTPD, the law enforcement agency of WMATA.   Defendants, who are officers sued in their individual capacity, do not have access to the proprietary information of their employer.

Officer Costanza produced his redacted training file.  *See* Response No. 20.  (Documents Bates # 117-162). Officer Ditrick produced his training file.  *See* Response No. 20. (Documents Bates # 163-177).  There is nothing more for them to disclose.  There was a typographical error in Ditrick's response, as it stated **Costanza's** training file was attached, but referenced the Bates numbers for  Ditrick's training file.  The typographical error was harmless because Costanza's and Ditrick's training files have different bates numbers.  Furthermore, Plaintiff is aware he has Ditrick's training file because he complains about it.

Beyond the redactions related to the exam, signatures (but not names) were redacted, as well as certain personal information, such as  family member's names, addresses, or Defendants' social security or date of birth.  There is nothing more in Defendants' possession to disclose.

As a final matter, Plaintiff claims herein, having not brought this issue to the attention of the Court until now, without this discovery dispute as the catalyst, that he "cannot designate a use of force expert."  Plaintiff's expert designations were due on March 15, 2020, per this Court's scheduling order set on 12/17/19.  Plaintiff's counsel advised by email on March 14, 2020 that she would file her client's disclosures on Monday the 16th, but that "one disclosure is delayed," due to the virus.  Counsel requested consent to late-file the disclosure, but she did not know how long was needed "because of the anxiety about this," but anticipated it would be 30 days from now.[4]

---

[4] **Plaintiff's Opposition:** Plaintiff has not filed a motion for leave to late file any disclosures.  It remains unclear how much time will be needed with the Mayoral Order in place. Considering the fact that Defendants filed a motion to stay because they, too, have not provided any expert designations and expressly indicated they did not anticipate being able to do so even with a 45 day extension because of the pandemic, their arguments seem insincere. They are not prejudiced by Plaintiff's delay in designating a use of force expert or a neurologist, if one or both are needed. **Defendant's Reply:** Not to be redundant, Plaintiff made Rule 26(a)(2) designations prior to the Mayoral Stay at Home order and at no time asked this court for an extension of time.  Defendants cannot designate any opposition experts until Plaintiff has made all of her affirmative Rule 26(a)(2) disclosures.

On May 16, counsel for Plaintiff stated that additional time was needed for the Rule 26 disclosures, because she was "coming down with something and need time to review." On May 17, counsel for Defendants advised that consent for a motion to late-file would be given in light of the circumstances, but upon the condition that Defendants' disclosures would be moved back 45 days from Plaintiff's disclosure date. In response, counsel for Plaintiff advised that disclosures would be provided that day, March 17th. Three expert disclosures were made by email later that evening by Plaintiff's counsel, consisting of a psychologist, a vocational expert, and an economist.

Since March 17th, Plaintiff's counsel has not brought to this Court' attention any need, or request to late-file a 26(a)(2) expert. Plaintiff has never mentioned any issue regarding the need to have "training information" before he can name a use-of-force expert until the parties were drafting their positions for this Notice of discovery dispute. Training records are not only unnecessary to name a use of force expert but have little or no probative value in the determination of whether an officer's actions are objectively reasonable. *Kansas v. Glover,* 589 U.S. ____ (2020). Plaintiff's position regarding his alleged need for any particular document before he can name an expert appears to be a convenient assertion under the circumstances, where Plaintiff has never sought leave to late-file an expert designation -- more than 40 days **after** Plaintiff's expert designations were required to be disclosed pursuant to this Court's scheduling order.

## B. Challenged Discovery Requests

***INTERROGATORY NO. 22****:   Please identify the following information about individuals whom you have detained or arrested from 2017 to the present and for <u>each respective year</u> provide the following*:

> a. *State the number of individuals that you have detained and those you have arrested. These should be two separate categories. In those same categories, identify, by percentage, how many detainees and arrestees were Black, White, Hispanic/Latino, Asian or other.*
> b. *Identify the locations of each detention or arrest by metro station (if applicable), bus stop (if applicable) or city and state and provide the number of arrests and detentions at each location.*
> c. *By percentage identify how many of the detainees and arrestees are under age 30.*
> d. *Of the arrests that you made, identify by percentage the crime committed and provide a breakdown, by percentage, of the race, color or ethnicity of the individuals whom you reported as being perpetrators of those crimes.*
> e. *Identify the number of arrests that resulted in prosecutions, pre-trial dismissals, guilty pleas entered, not guilty verdicts, and guilty verdicts.*

## <u>Defendant's Objections/Argument:</u>

Interrogatory No. 22 is overbroad, unduly burdensome, and not relevant to Plaintiff's cause of action. The interrogatory is not proportional to the discovery needs of this case. *See* Fed. R.

Civ. P. 26(b)(1). Other arrests and/or uses of force by Officers Costanzo and Ditrick in other cases are not relevant to the claims or defenses in this case. This is not a pattern or practice case under *Monell* in which a plaintiff seeks statistical evidence from a law enforcement agency. The fact of, and the number of other past arrests and/or uses of force have no bearing on the legal analysis of whether Defendants were objectively reasonable in their actions.

The Fourth Amendment requires police officers to act with objective reasonableness. *See Graham v. Connor*, 490 U.S. 386, 394-395 (1989). Use of force is judged from the perspective of the police officer at the at the scene. *Id.* **S**ubjective motivations are not relevant under the Fourth Amendment. *Id.* at 392-399; *see also City of Indianapolis v. Edmond,* 531 U.S. 32, 52 (2000) (quoting *Bond v. U.S.,* 529 U.S. 334, 338, n. 2 (2000) (Applying *Whren,* the issue is not the officer's state of mind, but the objective reasonableness of his actions under the Fourth Amendment)). It is unassailable that the legal standard for judging the force used by an officer is that objective reasonableness at the time of contested incident, and from the perspective of a reasonable police officer at the scene.

Furthermore, an officer's *prior use of force* provides no legal bearing on the issue of whether the use of force was *excessive*. Use of force is not synonymous with excessive force. The latter is a determination, whether administratively or judicially, that an officer's use of force was objectively unreasonable. *Use of force,* however, is what each law enforcement officer is legally justified to use in circumstances where the officer has either reasonable articulable suspicion or probable cause. Use of force comprises a *regular part* of an officer's duties, such as the placing of handcuffs on an arrestee, or placing a suspect in a transport vehicle. An officer uses force in wresting a weapon away from a suspect. Plaintiff's interrogatory seeking *use of force* information has no relevance to the claims and/or defenses in this case. The interrogatory is not proportional to the discovery needs of this case as well. There are many ways an officer uses force legally on a regular – if not weekly – basis, and Plaintiff's seeking out all of these legally justified instances of use of force requires an investment of time and effort on Defendants' part that has no relationship to the claims here.

Plaintiff can provide no rational and/or reasonable relationship between his request for this data – which is enormous in scope and not proportional to the needs of this case -- and his claims in this case. The amount of effort, time, and resources devoted to answering this interrogatory would be substantial and unduly burdensome.

Plaintiff's proffered concession for this interrogatory limit the scope to past incidents of taser use and handcuffing but is *still within the overarching framework of seeking information about race, color, ethnicity and age of detainees and arrestees*. The Court has recently quashed all subparts which involve racial and/or other personal data in Plaintiff's discovery requests, which are the majority of the subparts of Interrogatory No 22. *See* Minute Order dated April 9, 2020. Plaintiff also requested each arrest and/or detention pertaining to the closest bus stops and Metrorail station. Defendants object as well to this subpart because it is irrelevant and disproportionate to the needs of this case. There is no geographic component to proving whether an officer's actions were objectively reasonable or not.

Accordingly, if Plaintiff's concession, as referenced in the Court's Minute Order dated April 9, 2020, is construed as a request for information about Defendants' past incidents involving taser use and handcuffing *in the same incident,* Defendants would object, but would provide an answer. On the other hand, if Plaintiff's concession is construed as involving prior incidents of taser use or handcuffing as separate and/or independent incidents since 2017, Defendants maintain and renew their above-stated objections. That interrogatory would be overbroad, unduly burdensome, irrelevant to the claims and defenses in this case, and not proportional to the discovery needs of this case.

### **Plaintiff's Opposition**:

Defendants' analysis is off-center because an officer's prior acts may be admissible in a case like this one, where a plaintiff is bringing common law claims for assault and battery. *See Mazloum v. DC Metro Police Dept,* 517 F. Supp. 2d 74, *81 (D.C.D. 2007)(explaining that an officer's prior criminal acts may be admissible to prove **intent** in a lawsuit alleging excessive force so long as that evidence is "sufficiently similar"). Plaintiff agreed to limit this request to "tasers" and "handcuffing" as those were the two known uses of force involved in this case and those were "**sufficiently similar**" to the acts alleged in this case (emphasis added). *See Mazloum,* 517 F. Supp. 2d at *81.

Defendants object to this on the basis of relevance and proportionality, but this Court disfavors boilerplate objections. *DL v. District of Columbia,* 251 F.R.D. 38, 43 (D.D.C. 2008) ([T]he District's "boilerplate" general objections to plaintiffs' discovery requests, without more, fail to satisfy the District's burdens under the Federal Rules of Civil Procedure to justify its objections to discovery…. In situations such as these, this Court will overrule District's objections in their entirety.")

To be sure, Plaintiff is not suggesting that the other uses of force are relevant when evaluating a claim brought under 42 USC 1983 alone, however, prior acts are relevant to a case that includes allegations of common law claims of battery and assault as Plaintiff's case does. Evidence of prior acts or "other crimes" are admissible regarding the officer's **intent** to commit assault and battery. *See Mazloum,* 517 F. Supp. at *81. This evidence is also permissible to identify credibility issues of the accused officers. Mr. Musonza seeks evidence regarding the officers' prior use of force to establish their intent to commit an assault or battery on him. This evidence, so long as it is sufficiently similar, is not only discoverable but it is admissible. *See id.*

### **Defendants' Reply:**

Plaintiff misconstrues the Court's analysis under *Mazloum.* In that case, this Court noted first that, "Rule 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," with certain exceptions pertaining to criminal cases and the credibility of witnesses. Fed. R. Evid. 404(a)." *Mazloum v. D.C. Metro Police Dept.* 517 F.Supp.2d at 79-80. Also, "Rule 404(b) excludes evidence of "other crimes, wrongs, or acts" when such evidence is offered "for the sole purpose of proving that a person's actions conformed to his or her character," but provides that such evidence is admissible if offered to prove one of the legitimate purposes enumerated in the rule, including motive and intent." *Id.*

The *Mazloum* Court did **not** admit the other crimes evidence.  Before ruling that evidence was inadmissible, the Court stated that it was only considering prior acts only for the "intent" aspect as it pertained to the assault and battery claim.  *Id*.   In doing so, the *Mazloum* court relied on *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C.,1993), in which assault was defined as an "intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim." *Id*.   The *Mazloum* court, however, appears to be conflating "intent", *i.e*., a state of mind, with "intentional act," *i.e.,* an act of undertaken of one's own volition, willingly undertaken.

*Etheridge* noted that the officer in that case undisputedly assaulted and battered the plaintiff, and that the question was whether the officer had the legal right to do so.  Here, too, the video evidence is undisputed in showing that Plaintiff and Defendants were involved in a physical scuffle.   There is no claim that either Defendant did not mean to intentionally engage in the actions they took against Plaintiff.   Intent or intentional acts – as they related to the assault and battery claim – both are undisputed here.   The officers' actions taken against the Plaintiff, as seen in the video, are *intentional*.  They do not claim they were forced, or coerced, or made by mistake.  Plaintiff's alleged basis for the Rule 404 evidence lacks a basis in fact and law. The only outstanding issues between the parties is that of the officers' qualified privilege to use the force they did.  *Id*.

As to proportionality, it is apparent that Plaintiff has a fundamental misunderstanding of the terms "use of force" and "excessive use of force."  Prior "uses of force"-- where Plaintiff has proffered as a compromise to limit her requests to taser use and handcuffing -- are not synonymous with "excessive uses of force."

Plaintiff is seeking, through this interrogatory, to place at issue every single handcuffing ever made by Defendants, where handcuffing is an expected component of an officer's duties for every single arrest.  Plaintiff's discovery request is not analogous to *Mazloum*  or *Etheridge*, upon which Mazloum relies.

**_REQUEST  NO.  6:_**     *Any  and  all  materials,  orders,  directives,  reports,  memoranda, regulations,  and  summaries  of  WMATA  and/or  Metro  Transit  Police  Department  concerning disciplinary measures in effect on June 22, 2019 which are provided within Metro Transit Police Department for an officer who is found to have used excessive force in violation of departmental regulations.  If  there  have  been  any  changes  to  this  policy,  please  indicate  those  changes  by highlighting  or  underlining  them,  include  deletions,  additions  and  any  other  modifications  to policy and identify the page numbers on which the changes can be found.*

### Defendant's Objections/Argument:

Defendants object to Request No. 6 because it is irrelevant, overbroad, unduly burdensome, and not proportional to the discovery needs of this case.  WMATA's and/or MTPD's disciplinary policy is not relevant. WMATA, and its police department, MTPD are not parties here and any actions or decisions taken by WMATA regarding discipline have no relevance to the excessive force/assault and battery issues and claims of this matter.   Moreover, WMATA has sovereign

immunity under Section 80 of the WMATA Compact for its operation and management of its police force. *See Burkhart v. WMATA,* 112 F.3d 1207 (D.C. Cir.,1997); *Beebe v. WMATA.*129 F.3d 1283 (D.C. Cir.,1997). The only parties are two officers who are named in their individual capacity.

How and why MTPD may discipline an officer has no bearing or relevance to the question of whether or not Defendant's use of force was objectively reasonable and whether he had probable cause to arrest Plaintiff. Defendant also objects the extent said request may encompass information that is PCII or SSI; MTPD is responsible for maintaining the safety and security of the regional mass transportation system of greater Washington area. Furthermore, Defendant objects because there is no *Monell*-type claim pertaining to training, or lack of training or discipline of the Officers.

**Plaintiff's Opposition:**

Defendants' refusal to turn over this information flies in the face of logic. The information sought by Plaintiff, including training policies and disciplinary records, is ***not relevant to a Monell*** claim.  Plaintiff is **not** seeking a judgment against WMATA regarding failure to train. Plaintiff seeks to show that based on the training received by these officers, they knew or should have known they were violating Mr. Musonza's constitutional rights, which goes to the heart of a ***qualified immunity defense a***nd a ***punitive damages*** inquiry.  WMATA's response to these violations (e.g. disciplinary actions taken) would show whether these officers violated any policies established based on their training.

Qualified Immunity

WMATA's disciplinary policies and training materials are relevant to the officers' knowledge as to *whether his actions violated clearly established law, and whether his actions were reasonable*, which he must prove to raise a qualified immunity defense. *Pearson v. Callahan*, 555 U.S 223, 331 (2009).  If the officer was aware of disciplinary policies that he could have been subjected to in the event that he committed an act of excessive force but chose to engage in such an act this defeats a qualified immunity defense. Moreover, if an officer acts in a manner that is inconsistent with his training, this also undermines his claim to qualified immunity.

Punitive Damages

Cases brought under 42 U.S.C. 1983 against individual police definitely evaluate the training that an individual officer received, especially when the Plaintiff is seeking punitive damages which requires a showing that the Defendant acted with a "willful disregard for the plaintiff's rights..."  *Pitt v. District of Columbia*, 491 F.3d 494, 507-08 (D.C. Cir. 2007) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 657, 344 U.S. App. D.C. 265 (D.C. Cir. 2001)) (internal alterations omitted).  In order to impose punitive damages, the jury must find by clear and convincing evidence that the tortious act "was accompanied by conduct and a state of mind evincing malice or its equivalent." *Id.* The jury may "infer the requisite state of mind from the surrounding circumstances." *Id.* (quoting *Jemison v. Nat'l Baptist Convention*, 720 A.2d 275, 285-86 (D.C. 1998)).  What is the measure by which the officer's intent is evaluated to determine malice?  His training.

In *Pitt v. District of Columbia*, the court awarded punitive damages and concluded that a reasonable jury could conclude that the individual officers acted with recklessness or willful disregard or Mr. Pitt's rights, in ways that are similar to the actions of Defendants against Mr. Musonza.  For example, there was evidence that the two officers in Pitt: (1) initiated criminal proceedings against Mr. Pitt despite the fact that there was no evidence that he committed a crime; (2) omitted favorable evidence, including witness statements, from the arrest report and an affidavit submitted to prosecutors; and (3) falsified an arrest report and affidavit to justify arresting and beating Mr. Pitt. Based on these facts, the Court found that a reasonable jury could find by clear and convincing evidence that Officers Adams and Baxter acted recklessly or with wilful disregard of Mr. Pitt's rights. Unlike Pitt, Mr. Musonza has video.  The video depicts Mr. Musonza with his hands up when Officer Costanzo pushes him and begins to tase him.  Officer Costanzo prepared charges against Mr. Musonza for Assaulting a Police Officer and Obstruction of Justice. He prepared a police report to back up his version of events that Mr. Musonza posed a threat to him and other officers by "clinching his fists and squaring up" towards Costanzo.  What is more, the officer claimed that Mr. Musonza said "Go ahead and tase me."   Plaintiff alleges that Costanzo falsified the report—***this goes to the heart of a punitive damages claim because Costanzo knew that he committed an act of excessive force so he falsified the report and brought false charges to exonerate himself.*** This is exactly the type of conduct this Court would submit to the jury with a punitive damages instruction.

**Defendants' Reply:**

Plaintiff's bombastic language aside, his arguments and citations do not to support his claims or theories.

First, Request No. 6 pertains solely to *disciplinary* materials.  All of Plaintiff's arguments regarding training are irrelevant due to the fact that Request No. 6 does not seeking training materials.  Defendants will nonetheless, address all legal authority cited by Plaintiff in the context of the requested disciplinary material.

Plaintiff's argument regarding disciplinary materials requested appear related to the officers' assertion of qualified immunity.   Plaintiff starts his argument with the claim that, "if the officer was aware of disciplinary policies that he could have been subjected to in the event that he committed an act of excessive force but chose to engage in such an act this defeats a qualified immunity defense."  No authority or cite is provided for this assertion.  This is because long-established Supreme Court precedent, some of which is later cited by Plaintiff, establishes that there is a two-step procedure for deciding qualified immunity, none of which pertains to discipline.[5]

---

[5] First, "whether the facts that a plaintiff has alleged [ . . ] or shown [. . .] make out a violation of a constitutional right. [. . .]. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time."  *Pearson v. Callahan*, 555 U.S. 223, 232 (U.S.,2009)

The issue is *Pearson v. Callahan,* was whether federal courts would follow the mandatory two-step procedure for deciding the applicability of qualified immunity established by the Supreme Court in *Saucier v. Katz,* 533 U.S. 194 (2001).  *See Pearson v. Callahan,* 555 U.S. at 227.  The trial court granted the officers' summary judgment because it determined that the "consent-once-removed doctrine" could have led officers to believe their conduct  in searhing a home was authorized. *Id.* at 228-29.  The Tenth Circuit reversed. *Id.* at 230.  The Supreme Court reversed the Tenth Circuit and held that although the *Saucier* two-step qualified immunity analysis remained appropriate, courts were no longer required to implement the two-step analysis in order.  *Id.* at 236.  Nothing in *Pearson* addresses the purported relevance of a police agency's disciplinary policies, procedures and/or measures.  Nothing in *Pearson* even remotely suggests that a law enforcement agency's disciplinary policy, procedures, and/or measures play any part in determining whether an officer violated a clearly established constitutional right.

Plaintiff's citation to *Platt v. D.C.* is equally misplaced and has nothing to with the relevance of a law enforcement agency's disciplinary policies and/or measures.  The D.C. Circuit held that under D.C. law, "punitive damages [were] warranted only when the defendant commits a tortious act accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right, or other circumstances tending to aggravate [an] injury."  *Platt v. D.C.,* 491 F.3d 494, 507 (D.C. Cir. 2007).  *Platt* involved allegation that officers initiated a criminal proceeding – i.e. malicious prosecution – despite having negative identifications from two alleged victims and an alleged fabricated affidavit for an arrest warrant.  *Id.*  The issue was whether a jury could find actual malice by clear and convincing evidence.  Thus, nothing in *Platt* addresses the relevance of a police agency's disciplinary policies, procedures and/or measures.  Absolutely nothing in *Platt* even remotely suggests that a law enforcement agency's disciplinary policy, procedures, and/or measures play any part in determining whether an officer acted with actual malice in determining the viability of punitive damages.

It strains the imagination why Plaintiff believes his legal authority demonstrates the relevance of a law enforcement agency's disciplinary policies and/or measures.  Defendants maintain their objection that WMATA's and/or MTPD's disciplinary policies are irrelevant and are not subject to disclosure.

As a final matter, Plaintiff is already *in possession of the internal investigation file* ("OPRI File") *related to this incident*. (Bate stamp 195-312), which includes all internal findings and decisions.

**REQUEST NO. 8:**  *Any and all materials, orders, directives, reports, memoranda, scripts, rules, regulations, guidelines, and summaries issued by the Washington Metropolitan Area Transit Authority or any of its agencies, including but not limited to its police department and its prosecuting attorney's office, governing the use of force by an officer in making an arrest and/or concerning the standards in effect on June 22, 2019 which were to be used in determining when the use of force on the part of a police officer is legal and justified, including but not limited to the following:*

*(a) all such materials used in the training of police officers (course outlines, books, manuals, brochures, films, filmstrips, tape recordings, and other audiovisual material, etc.); and*
*(b) all such materials issued at any time to active duty police officers (orders, memoranda, brochures, leaflets, scripts, etc.).*
*(c) If there have been any changes to this policy since June 22, 2019, please highlight those changes or add them as a supplement to this documentation and identify the page numbers on which the changes can be found.*

**Defendant's Objections/Argument:**

Defendants objected to Request No. 8 because the request was ambiguous, overbroad, unduly burdensome, irrelevant, and not proportional to the discovery needs of this case. The request may encompass information that is PCII or SSI; MTPD is responsible for maintaining the safety and security of the regional mass transportation system of greater Washington area. Additionally, Defendant objects because said request is not proportional to the claims of the case, in which Plaintiff alleges: a) excessive force in his arrest; b) his arrest was unlawful; and c) that he was maliciously prosecuted, all three of which are discrete claims that do not entail a review of hundreds of documents for privilege and protected information. Defendant also objects in that scope of the request seeks information irrelevant to the subject matter of Plaintiff's discrete claims. Furthermore, Defendant objects because there is no *Monell*-type claim pertaining to training, or lack of training, of the Defendant officers.

Use of force policies that were not created or in effect on the date of an incident could not possibly have any relevance. Nevertheless, without waiving their objections, Defendants produced copies of their employer's General Orders pertaining to Use of Force; Arrest; Contacts, Stops and Frisks. (Bates Stamped 93-96; 111-112; 103-107).

**Plaintiff's Opposition:**

Defendants' produced three page that were excerpts from a General Order but produced *nothing* that pertains to the specific training these officers received as it relates to use of force, tasers, arrests and handcuffing. To be sure, defendants produced portions of police academy examinations for Officer Costanzo but redacted the questions and for some examinations, only provided answer sheets with no questions and redacted the instructor's name—none of this information is protected by attorney-client privilege or work-product privilege. It stands to reason that if Ditrick and Costanzo hold the same positions and both received the same training that their files would contain the same or similar information. However, Defendants produced 43 pages for Costanzo and 14 pages for Ditrick, which is odd on its face. Moreover, there is a protective order in place so Defendants' have no basis to withhold this information.

**Defendants' Reply:**
Defendants have produced MTPD's Use of Force General Order; its Contacts, Stops and Frisk General Order and its Arrest General Order. Nothing in Request No. 8 requests Defendants training. Request No. 8 asks for WMATA's and/or MTPD's *orders, directives, reports, memoranda, scripts, rules, regulations, guidelines, and summaries* pertaining to Use of Force. Defendants, who are individually named, have produced their redacted training files. *See* Response No. 20 for Officer Costanza (Documents Bates # 117-162) and Officer Ditrick

(Documents Bates # 163-177).  Plaintiff's dissatisfaction with contents of MTPD's training files has no bearing on whether Defendants have satisfied their document production.  Defendants are not the law enforcement agency; they are individual defendants being sued in their individual capacity. They have produced what is in their possession and/or control.

*REQUEST NO. 10: Please provide a copy of all documents showing that the responding officers involved in the incident that is the subject matter of Plaintiff's complaint received and completed proper training prior to the incident. The documentation must provide the dates the training was completed and must include any subsequent training along with pertinent dates.*

**Defendant's Objections/Argument:**

Defendants object to Request No. 10 because the request is ambiguous, overbroad, unduly burdensome, irrelevant, and not proportional to the discovery needs of this case.  Plaintiff has requested confidential personnel and/or training records for Maryland, Virginia, and the District of Columbia.  The issue of how Defendants were trained, or how well and how often, are not relevant to the Plaintiff's case.  Defendants employer has sovereign immunity under Section 80 of the WMATA Compact for its operation and management of its police force.  *See Burkhart v. WMATA,* 112 F.3d 1207 (D.C. Cir. 1997); *Beebe v. WMATA.*129 F.3d 1283 (D.C. Cir. 1997).  Thus, the issue of Defendants training and/or lack thereof is irrelevant and not actionable under the law.  Nevertheless, without waiving their objections, Defendants produced their redacted training records.  (Bates Stamped 117-162 and 163-177).

**Plaintiff's Opposition:**

Please see Plaintiffs' Opposition to Defendant's Objection to Request No. 8 at p. 11.

**Defendants' Reply:**

*See* Defendants Reply to Plaintiff's Opposition to Request No. 8 at p. 9.  Defendants have no idea what Plaintiff construes as "proper training."  Defendants are sworn officers in three jurisdictions and have provided their files and credentials showing that status.

*REQUEST NO. 11: Please provide a copy of all curriculum standards utilized by Metro Transit Police Department.*

**Defendant's Objections/Argument:**

Defendants object to Request No. 11 because the request is ambiguous, overbroad, unduly burdensome, irrelevant, and not proportional to the discovery needs of this case.  Defendants are unclear what Plaintiff means by "curriculum standards."  Nevertheless, each jurisdiction in which Defendants are certified to be police officers (Maryland, Virginia and the District of Columbia) have their own training requirements.  MTPD Officers are trained across many subject areas during their basic training, which is at least 1000 hours and includes such broad and diverse subjects as citation and report writing; weapon care, driving emergency vehicles, using a police radio, how to coordinate police investigations on the Metrorail tracks which are

electrified, etc.-- all of which are part of an officer's training. Such broad and vague terms used in Request No. 11 would entail days if not weeks of review of thousands of documents covering a multitude of areas, most of which are not even related by subject matter to the allegations of this complaint.

Furthermore, Defendant's employer has sovereign immunity under Section 80 of the WMATA Compact for its operation and management of its police force. *See Burkhart v. WMATA,* 112 F.3d 1207 (D.C. Cir.,1997); *Beebe v. WMATA,* 129 F.3d 1283 (D.C. Cir.,1997). Defendants also object because the information is not controlled or possessed by them. It is controlled and possessed by WMATA's MTPD and/or the applicable governmental bodies of Maryland, Virginia, and the District of Columbia. The request includes information that is PCII and/or SSI; MTPD is responsible for maintaining the safety and security of the regional mass transportation system of greater Washington area.

Defendants further object because said request is not proportional to the claims of the case and because it seeks information irrelevant to the subject matter of Plaintiff's discrete claims. Furthermore, there is no *Monell*-type claim pertaining to training, or lack of training, of the Defendant officers.

Nevertheless, without waiving their objections, Defendants have produced their redacted training records. (pp. 117-162 and 163-177).

### **Plaintiff's Opposition:**

Plaintiff's request for training records is relevant to the qualified immunity defense Defendants will raise and to Plaintiff's punitive damages inquiry. Defendants have **NOT** produced the complete and/or relevant training files of the officers. They have produced certificates for one officer (Ditrick) but not both and the documents produced have been redacted and are missing data pertaining to their full training records. *See supra 2-3 and 11.*

### **Defendants' Reply:**

See Defendants Reply to Plaintiff's Introductory Statement, regarding redactions and production of Defendant's training records. Request No. 11 ask Defendants for their employer's "curriculum standards." Defendants produced t**heir** redacted training files as being responsive to this request. Notably, Defendants objected to the ambiguity of Plaintiff's request. While the term "curriculum standards" may mean something to him, his understanding and/or belief is not an understood universal term. Nevertheless, both Officers Costanza and Ditrik produced their redacted training files, as kept by their employer. The individual officers sued in their personal capacity have provided everything in their possession. Thus, there is nothing more Defendants can produce.

**_REQUEST NO. 15:_** *All documents and electronically stored data maintained by the internal affairs division of Metro Transit Police Department or any other division of the Metro Transit Police Department concerning all complaints made against any Metro Transit Police officer for*

*the past 10 years for excessive use of force, including but not limited to the information that is retrievable by computer code.*

**Defendant's Objections/Argument:**

Defendants object to Request No. 15 because Defendants do not have possession, custody or control of any documents pertaining to MTPD's internal investigations of other officers; such documents are possessed and controlled by WMATA and/or MTPD.  Defendants also do not have the right to access such information under the collective bargaining agreement between WMATA and the police bargaining unit, the Fraternal Order the Police.  The request is harassing of, and violates of the privacy of, non-defendant officers.  The information requested is not relevant to the claims of this case, nor it is proportional to the discovery needs of this case.

**Plaintiff's Opposition:**

Plaintiff narrows this request to pertain to the officers named in this lawsuit.  Plaintiff is seeking evidence related to disciplinary measures taken against officers who use excessive force because it will show whether these officers deliberately and recklessly disregarded Mr. Musonza's rights. If they knew there was a policy against excessive force and violated it anyway, this goes right to the heart of a punitive damages inquiry, which requires a showing that the Defendant acted with a "willful disregard for the plaintiff's rights..."*Pitt v. District of Columbia*, 491 F.3d 494, 507-08 (D.C. Cir. 2007) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 657, 344 U.S. App. D.C. 265 (D.C. Cir. 2001)) (internal alterations omitted).

**Defendants' Reply:**

Given the narrowing of Plaintiff's request to "disciplinary measures taken against [Officers Costanza and Ditrick for excessive force] and the given the parties' prior agreement *memorialized in the letter sent to Chambers on* April 2, 2020 that regarding discovery of prior disciplinary matters, of the parties agreed that "Defendants will provide any excessive force/unlawful arrest/seizure disciplinary investigations against them, for the last five years" Defendants will respond to this request.  As a further comment on Plaintiff's argument, however, MTPD's policy is not equivalent to the legal standard of whether there was a clearly established constitutional right and whether that right was violated, a question that controls the issue of an officer's qualified immunity.  *Pearson v. Callahan*,  555 U.S. 223, 232 (U.S.,2009)

**REQUEST NO. 17**: *All use of force reports created, even if not submitted by Officer Costanzo to MTPD.*

**Defendant's Objections/Argument:**

Defendants object to Request No. 17 because the request is overbroad, unduly burdensome, irrelevant, and not proportional to the discovery needs of this case.  An officer's *prior use of force* provides no legal bearing on the issue of whether the use of force was *excessive*.  Use of force is not synonymous with excessive force.  The latter is a legal finding that an officer's use of force was objectively unreasonable, and therefore illegal and/or improper under the law.  The former is what each law enforcement officer is legally justified to use in circumstances where the

officer has either reasonable articulable suspicion or probable cause.  Notwithstanding Defendant objections, all documents which document the force used in the instant case have been produced to Plaintiff already. (Bate Stamp 178-308).

**Plaintiff's Opposition:**

Some of the relevant documents were produced.  Plaintiff is still reviewing this information to determine if more information is needed.

**Defendants' Reply:**

Defendants maintain their objection.  There is nothing to Reply to.

Respectfully submitted,

/s/ Ja*nice L. Cole,*
Janice L. Cole #44035
Senior Counsel II
600 Fifth Street, N.W.
Washington, D.C.  20001
Telephone: (202) 962-2543
Facsimile: (202)  604-1833
E-mail: jlcole@wmata.com

/s/ Neal M. Janey, Jr.
Neal M. Janey, Jr.
Senior Counsel
WMATA Office of General Counsel
600 Fifth Street NW, 2nd Floor
Washington, DC 20001
202.962.1061
nmjaney@wmata.com

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of April, 2020 copy of the foregoing Notice of Discovery Dispute was served by email upon:

Yaida Ford
Ford Law Pros, PC
10 G Stret NE, Suite 600
Washington, DC  20002
yford@fordlawpros.com

*/ s/ Neal M. Janey, Jr.*
Neal M. Janey, Jr.