# Table Of Contents

Table Of Authorities .........................................................................................................ii

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY OFFICERS COSTANZO AND DITRICK** ......................................................................... - 1 -

I.      **INTRODUCTION**..................................................................................... - 1 -

II.     **FACTS** ...................................................................................................... - 1 -

III.    **STANDARD OF REVIEW** ...................................................................... - 1 -

      A.  **Generally** .......................................................................................... - 1 -

      B.  **Standard Of Review With Video Evidence.** ................................. - 2 -

IV.    **ARGUMENT** .......................................................................................... - 4 -

      A.  **Defendants Have Qualified Immunity For Plaintiff's Claims in Count One**............. - 4 -

          1.  **Qualified Immunity Bars Plaintiff's Claim of Unlawful Seizure.** ........................ - 5 -

              a.  **Defendants possessed probable cause to arrest Plaintiff, barring Plaintiff's claim of unlawful seizure.** ................................................................. - 5 -

              b.  **The right to be free from arrest under these facts was not clearly established at the time of Defendants' actions.** .......................... - 14 -

          2.  **Qualified Immunity Bars Plaintiff's Excessive Force Claim** ............................. - 16 -

              a.  **Defendants' use of force was objectively reasonable.** ................................. - 16 -

              b.  **There Is No Clearly Established Right To Be Free From Force Used By Defendants Against Plaintiff** ......................................................... - 22 -

      B.  **This Court Should Exercise Supplemental Jurisdiction Because Plaintiff's Common Law Claims Derive From The Same Common Nucleus Of Operative Fact As Plaintiff's Federal Claim And Because Judicial Economy And Fairness Would Be Favored.** ................................................................................. - 23 -

      C.  **Plaintiff's Claim For False Arrest (Count Two) Fails Because Defendants Had Probable Cause.** .................................................................................. - 24 -

      D.  **Defendants' Actions Were Reasonably Necessary and Privileged, Requiring Dismissal of Plaintiff's Assault And Battery Claim (Count III)** .................................. - 26 -

      E.  **Plaintiff Fails To Prove The Elements of Malicious Prosecution** .............................. - 28 -

V.      **CONCLUSION** ...................................................................................... - 30 -

# Table Of Authorities

## Cases

*Amobi v. District of Columbia Dep't of Corr.*, 755 F. 3d 980 (D.C. Cir. 2014) ........................................ - 28 -

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................................... - 16 -

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................................... - 2 -

*Armbruster v. Frost*, 962 F.Supp.2d 105 (D.D.C. 2013) ....................................................................... - 22 -

*Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) .......................................................................................... - 4 -

*Ball v. United States*, 803 A.2d 971 (D.C. 2002) ................................................................................ - 6 -

*Bradshaw v. District of Columbia*, 43 A.3d 318 (D.C. 2012) ................................................................ - 24 -

*Brinegar v. U.S.*, 338 U.S. 160 (1949) ........................................................................................... 5, 6 -

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ........................................................................................ - 23 -

*Brown v. Carr*, 503 A.2d 1241 (D.C. 1986) ....................................................................................... - 28 -

*Burney v. Suggs*, No. 1:21-cv-01087, 2022 U.S. Dist. WL 4355279, at *8 (D.D.C Sept 20, 2022 ....... - 24 -

*Campbell v. District of Columbia*, 245 F.Supp.3d 78 (D.D.C. 2017) ..................................................... - 14 -

*Carroll v. United States*, 267 U.S. 132 (1925) .................................................................................... - 5 -

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................................... - 2 -

*City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156 (1997) ........................................................... - 24 -

*Corrigan v. Glover*, 254 F.Supp.3d 184 (D.D.C., 2017) ....................................................................... - 23 -

*Cromartie v. District of Columbia*, 479 F. App'x 355 (D.C. Cir. 2012) .................................................. - 19 -

*Cutchin v. District of Columbia*, 369 F.Supp.3d 108 (D.D.C., 2019) ........................................ - 6, 19, 20, 21 -

*Dauphine v. U.S.*, 73 A.3d 1029 (D.C. 2013) ..................................................................................... - 9 -

*Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977) ......................................................................... - 24, 28 -

*DeWitt v. District of Columbia*, 43 A.3d 291 (D.C. 2012) .................................................................... - 28 -

*District of Columbia v. Chinn*, 839 A.2d 701  (D.C. 2003) .................................................................... - 26 -

*District of Columbia v. Murphy*, 635 A.2d 929 (D.C.1993) ................................................................. - 24 -

*District of Columbia v. Wesby*, ___ U.S. ___ 138 S. Ct. 577 (2018) ................................................ - 6, 15 -

*Dormu v. D.C.*, 795 F Supp. 2d 7 (D.D.C. 2011) ............................................................................... - 17 -

*Enders v. District of Columbia*, 4 A.3d 457 (D.C. 2010) ..................................................................... - 24 -

*Garay v. Liriano*, 943 F. Supp. 2d 1 (D.D.C. 2013) ............................................................................ - 17 -

*Gayden v. United States*, 107 A.3d 1101 (D.C. 2014) ........................................................................ - 11 -

*Goolsby v. District of Columbia*, 317 F.Supp.3d 582 (D.D.C. 2018) ................................................. 19, 21 -

*Graham v. Connor*, 490 U.S. 386 (1989) .................................................................................. - 5, 15, 16, 17 -

*Greene v. Dalton*, 164 F.3d 671 (D.C. Cir. 1999) ................................................................................ - 2 -

*Harding v. Gray*, 9 F.3d 150 (D.C. Cir. 1993) .................................................................................... - 2 -

*Hargraves v. District of Columbia*, 134 F.Supp.3d 68 (D.D.C. 2015) ........................................ 9, 17, 21, 27 -

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................................................................ - 4 -

*Illinois v. Gates*, 462 U.S. 213 (U.S.Ill.,1983) ................................................................................... - 6 -

*Illinois v. Wardlow*, 528 U.S. 119 (2000) .......................................................................................... - 13 -

*INS v. Delgado*, 466 U.S. 210 (1984) ........................................................................- 11 -

*Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) ...................................................- 22 -

**Kenley v. District of Columbia**, No. CV 14-1232 (JEB), 2015 ...........................- 28 -

*Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987) .......................................- 2 -

*Lash v. Lemke*, 786 F.3d 1 (D.C. Cir. 2015) ..................... 3, 14, 15, 18, 18, 20 -

*Malley v. Briggs*, 475 U.S. 335 (1986) .......................................................................- 4 -

**Maryland v. Pringle**, 540 U.S. 366  (2003) ..............................................................- 6 -

**McGovern v. George Washington Univ.**, 245 F. Supp. 3d 167 (D.D.C. 2017)..........- 8 -

*Oberwetter v. Hilliard*, 639 F.3d 545 (D.C. Cir. 2011) ..........................................- 19 -

*Pearson v. Callahan*, 555 U.S. 223 (2009) ..........................................................4,  5 -

*Rogala v. District of Columbia* 161 F.3d 44 (D.D.C. 1998) .........................17, 22, 26 -

*Saucier v. Katz*, 533 U.S. 194 (2001)..............................................................- 4, 23 -

*Scott v. Harris*, 550 U.S. 372 (2007) ...............................................................- 2, 3 -

*Smith v. United States*, 121 F.Supp.3d 112 (D.D.C. 2015)....................................- 29 -

*Tennessee v. Garner*, 471 U.S. 1 (1985) ...............................................................- 15 -

*Terry v. Ohio*, 392 U.S. 1 (1968) ............................................................- 11, 12, 17 -

*Texas v. Brown,* 460 U.S. 730 (1983)......................................................................- 6 -

*United States v. Wilson, No.* 11–0275, 1994 WL 408264, at *2 (D.C. Cir. May 5, 1994) .....................- 17 -

*Wardlaw v Pickett,* 1 F.3d 1297 (D.C. Cir. 1993)...................................................- 17 -

*Wasserman v. Rodacker*, 557 F.3d 635 (D.C. Cir. 2009) ......................................- 19 -

*White v. Pauly* ___ U.S. ___, 127 S. Ct. 548 (2017).............................................- 15 -

**Other Authorities**

D.C. Code § 22-405.01 ...............................................................................- 5, 8, 9 -

D.C. Code 22-405 ...........................................................................................5, 9 -

Fed. R. Civ. P. 56................................................................................................- 2 -

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **TAPIWA MUSONZA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **CASE NO.: 1:19-cv-02779 JMC** |
| **OFFICER COSTANZO,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

---

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY
OFFICERS COSTANZO AND DITRICK**

Officers Costanzo and Ditrick, through counsel, hereby move for summary judgment on

all claims asserted against them by Plaintiff Tapiwa Musonza ("Plaintiff").

## I.    INTRODUCTION

On May 20, 2019, Plaintiff filed a four-count Complaint against defendant officers, who

are employed by the Washington Metropolitan Area Transit Authority's ("WMATA") Metro

Transit Police Department ("MTPD").  Plaintiff's claims arise out of his arrest at WMATA's U

Street-Cardozo Metrorail station on June 22, 2019.  (Complaint, ECF #1, pp. 1-2). His four-count

Complaint alleges: (1) Fourth Amendment excessive force and unreasonable seizure under 42

U.S.C. §1983; (2) false arrest; (3) assault and battery; and (4) malicious prosecution. *Id.*

## II.    FACTS

*See* Defendants' Statement of Material Facts Not in Dispute ("SMF") at Exhibit 1.

## III.    STANDARD OF REVIEW

### A.  Generally

Summary judgment is appropriate whenever the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Once the moving party makes the initial showing that no issue exists as to any material fact, the burden shifts to the opposing party to demonstrate the existence of a material factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, as the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). In deciding a summary judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing that creates a genuine issue of material fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Mere conclusory allegations cannot raise a genuine issue of material fact. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

**B.  Standard Of Review With Video Evidence.**

The obligation of a court to view the facts in the light most favorable to the nonmoving party on motion for summary judgment applies only when, and if, there is a *genuine* dispute of facts. *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal citations omitted) (emphasis added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* The Supreme Court rejected the non-movant/suspect's version of the facts in *Scott v. Harris* who claimed that he was not a threat while fleeing from the police in his car when a video demonstrated otherwise. *Id*. at

379.  The Supreme Court noted that the "videotape [told] quite a different story" from the story told by the suspect. *Id.* The video showed the non-movant in his car "racing down narrow, two-laned roads in the dead of night at speeds that are shockingly fast;" his car could be seen to 'swerve around more than a dozen cars" and force other drivers onto the shoulders of the road to avoid collisions. *Id.*

The D.C. Circuit was similarly confronted with video evidence in *Lash v. Lemke,* 786 F.3d 1, 6 (D.C. Cir. 2015) which showed facts different from what the non-movant alleged.  In that case, the Circuit Court rejected the non-movant's version of the facts, viewing the facts instead in the light established by the video evidence, and affirmed the grant of summary judgment for several U.S. Park Police ("USPP") officers.  *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015).  Lash, the non-movant, had alleged that the USPP officers unlawfully "tased" him while he was part of the Occupy D.C. encampment at McPherson Square in 2012.  *Id.* at 3-4. After viewing the video evidence, the D.C. Circuit rejected the version of the facts where he declared that he did not resist arrest. *Id.* at 6.  "…[W]hen a nonmovant's account of the facts is "utterly discredited" by the clear evidence provided by a video recording, the Court has instructed us not to rely on a 'visible fiction' but rather 'view [ ] the facts in the light depicted by the video record." *Id*. at 6 (internal citations omitted).  Despite Lash's protestations otherwise, the D.C. Circuit stated that it "know[s] to a certainty that he resisted arrest because we can see him doing so." *Id*. at 7.

Officers Costanzo and Ditrick ("Defendants") attach to this motion video evidence which depicts recorded facts that discredit Plaintiff's allegations of constitutional and common-law unlawful seizure and excessive force, as well as common law malicious prosecution by Defendants on June 22, 2019, at the U Street - Cardozo Metrorail Station.  *See* Exhibit 4, U

Street Metrorail Station video ("Station Video"). This Court should reject Plaintiff's version of facts, just as the Supreme Court in *Scott v. Harris* and the D.C. Circuit in *Lash v. Lemke* rejected the facts alleged by the plaintiffs in those cases, because the video evidence renders Plaintiff's facts "visible fiction."

## IV. ARGUMENT

### A. Defendants Have Qualified Immunity For Plaintiff's Claims in Count One

"Qualified immunity shields federal and state officials from suit unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, **and** (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)) (emphasis added).

Such "immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and "it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Police officers are protected by qualified immunity, whether they make an error that is a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations and internal quotation marks omitted).

In *Saucer v. Katz,* the Supreme Court established two steps that a Plaintiff must satisfy to overcome Defendants' qualified immunity defense. *See Saucier v. Katz*, 533 U.S. 194 (2001). The *Saucier* Court determined that the first question to be resolved is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 201. If a plaintiff can satisfy this first step, the second step is for the Court to decide whether the constitutional right at issue was clearly established at the time of the defendant's alleged

violation.  *Id.* The Supreme Court later held, *Pearson, supra,* that a court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson,* 555 U.S. at 236.

Here, whichever prong this Court begins with, the Plaintiff cannot meet his burden of defeating Defendants' qualified immunity defense, because:  1) the objective facts demonstrate that Defendants' actions in arresting Plaintiff meet the Fourth Amendment constitutional standards of probable cause and of objectively reasonable force. *See Graham v. Connor,* 490 U.S. 386, 397 (1989) (objective reasonableness is standard for excessive force inquiries) and 2) Plaintiff cannot meet his burden of proving that any alleged constitutional right that was violated was a clearly established right at the time of the alleged violation. *Saucer v. Katz*, 533 U.S. at 201.

**1.  Qualified Immunity Bars Plaintiff's Claim of Unlawful Seizure.**

**a.  <u>Defendants possessed probable cause to arrest Plaintiff, barring Plaintiff's claim of unlawful seizure.</u>**

The video and other evidence proves that Defendants had probable cause, to believe that Plaintiff had committed the crimes of resisting arrest and assault on a police officer.  *See D.C. Code § 22-405.01(b), Resisting Arrest; § 22-405(b), Assault on a police officer.*

Probable cause exists where officers know of facts and circumstances that are reasonably trustworthy and "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. U.S.,* 338 U.S. 160, 175–76 (1949); *quoting Carroll v. United States*, 267 U.S. 132, 162 (1925).  The certainty of the facts that result in a showing of probable cause is not reducible to any pat equation, because "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not

readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (U.S.Ill.,1983).

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar,* 338 U.S. at 175 (internal quotation marks and citation omitted). "It is clear that only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause." *Gates,* 462 U.S. at 235 (internal quotation marks and citation omitted). Probable cause does not "demand any showing that [the arresting officer's belief in a suspect's guilt] be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742 (1983) (plurality opinion); *accord Ball v. United States,* 803 A.2d 971, 974 (D.C. 2002). Probable cause also does not obligate an officer to "'rule out" the validity of a suspect's claims of innocence prior to arresting him." *Cutchin v. District of Columbia*, 369 F.Supp.3d 108, 123 (D.D.C., 2019) (quoting *District of Columbia v. Wesby,* ___ U.S. ___ 138 S. Ct. 577, 585 (2018)).

In *District of Columbia v. Wesby,* the Supreme Court unanimously held that the District of Columbia's Metropolitan Police Department's ("MPD") police officers who arrested partygoers for unlawful entry in a vacant house had probable cause for the arrests, overturning the decision by the D.C. Circuit which accepted the partygoers' argument that the officers could not prove that they had entered against the will of the owner. *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. at 588. The Supreme Court held that the D.C. Circuit erred by failing to follow "two basic and well-established principles of law." *Id.*

The first failure occurred when the D.C. Circuit viewed each fact "in isolation, rather than as a factor in the totality of circumstances." *Id*. (quoting *Maryland v. Pringle*, 540 U.S. 366, 372, n.2 (2003)). *Wesby* reiterated the well-established principle that the facts related to probable cause must be viewed as a whole picture, because "precedents recognize that the whole

is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Id.* (internal citations omitted). It was error when the D.C. Circuit dismissed the fact that the partygoers ran and hid when the MPD officers entered the house for a determination of whether probable cause existed; this fact was viewed in isolation and ignored the totality of the evidence known to the officer. *Id.* It was also error when the Circuit Court did not look at the totality of the circumstances when it held that the condition of the vacant house, "on its own" could not put the partygoers on notice that they were unwelcome in the house. *Id.* The Supreme Court found that the record showed undisputed facts showing that the house was clearly uninhabitable, rendering the partygoers' assertion of having consent to be there implausible.

The second basic principle that was not followed was that Circuit Court required an officer to rule out innocent explanations of suspicious circumstances. *Id.* The lap dances that the officers found occurring in the house were incorrectly dismissed by the D.C. Circuit Court because partygoers stated that they were for a bachelor party. "[P]robable cause does not require that an officer rule out a suspect's innocent explanation of suspicious facts." *Id. All* facts must be examined from the standpoint of the objectively reasonable officer. *Id.* The Supreme Court also noted that probable cause is not "a high bar" for law enforcement officers to meet. *Id.* (internal citations omitted).

The Supreme Court held that not only should the Circuit Court have recognized that the "circumstances certainly suggested criminal activity" sufficient to support probable cause, but it also should have held that the MPD officers were entitled to qualified immunity. *Id.* The Supreme Court corrected the D.C. Circuit's mistaken view of the "clearly established" prong of qualified immunity analysis, because if that mistaken analysis were left uncorrected and followed elsewhere, the decision "would undermine the values that qualified immunity seeks to

promote." *Id*. (internal citations omitted).

General principles of law cannot demonstrate the "clearly established" prong: to be "clearly established" requires a showing that "the legal principle clearly prohibits the officer's conduct in the *particular circumstances before him*." *Id*. at 590. (Emphasis added). Moreover, "clearly established" requires a "high degree of specificity." *Id.* (internal citations omitted). Courts should not define "clearly established" at a high level of generality. *Id*. (internal citations omitted.).

In Fourth Amendment cases, the specificity requirement of the clearly established rule is especially important. *Id*. (internal citations omitted). Probable cause is a fluid concept and is particularly tied to the facts and probabilities of each situation. This fluidity of concept can make it especially difficult for officers to know how the standard applies to each situation they encounter. *Id*. (internal citations omitted). Therefore, the specificity requirement helps give guidance to officers.

Here, the video evidence and undisputed facts establish that Officers Costanzo and Ditrick had probable cause to arrest Plaintiff on June 22, 2019. The officers arrested Plaintiff for assault on a police officer, obstruction of justice, and resisting arrest. *See* Complaint, ECF #1, pp. 1, 2. "To determine whether [an officer] had probable cause to believe that [a plaintiff was] violating District of Columbia law, courts look to District law to identify the elements of each … offense [ ]." *McGovern v. George Washington Univ.*, 245 F. Supp. 3d 167 (D.D.C. 2017) (citation and internal quotation marks omitted).

Under D.C. Code § 22-405.01 (2018), the elements of the crime of resisting arrest are defined as:

"Whoever without justifiable and excusable cause intentionally resists an arrest by an individual who he or she has reason to believe is a law enforcement officer or prevents that individual from making or attempting to make an arrest of or detain another person shall be guilty of a misdemeanor."

§ 22-405.01. Resisting arrests by individual reasonably believed to be a law enforcement officer., DC CODE § 22-405.01

Under D.C. Code 22-405(b), the elements of the crime of assault on a police officer are:

(b) Whoever without justifiable and excusable cause assaults a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned not more than 6 months or fined not more than the amount set forth in § 22-3571.01, or both.

§ 22-405(b). Assault on member of police force, campus or university special police, or fire department., DC CODE § 22-405 (b).

Both resisting arrest and assault on a police officer are general intent crimes; neither have an element of specific intent. A general intent statute is one where the requisite intent required to violate the statute is the general intent to commit the act that constitutes the crime, not intent to violate the law itself. *See Dauphine v. U.S.*, 73 A.3d 1029, 1032 (D.C. 2013(explaining general intent).

Probable cause existed for Officer Costanzo to arrest Plaintiff under § 22-405.01 when Officer Costanzo approached Plaintiff on the platform. The facts and circumstances that existed when he arrived would lead any reasonable officer to believe that Plaintiff was committing the crime of resisting arrest, *i.e.*, "preventing [Ditrick and Ottmer] from making or attempting to make an arrest of or detain [the handcuffed minor].". § 22-405.01. *See, e.g., Hargraves v. District of Columbia*, 134 F.Supp.3d 68, 83-84 (D.D.C. 2015) (probable cause based on totality of facts and circumstances known to arresting officers and reasonably trustworthy information

supporting a crime).

When Officer Costanzo arrived on the U Street Cardozo platform, he already knew that Officers Ditrick and Ottmer had requested priority help and he was dispatched to provide that help. SMF ¶¶ 34-36. He came to the station using his lights and sirens. SMF ¶ 38. Officer Costanzo ran into the U Street Metrorail station in a hurry, passing a passenger exiting the station who told him that the officers inside needed his help. SMF ¶ 40. When Officer Costanzo neared the bench on the U Street platform, he could see Plaintiff standing very close to the back of the bench where a handcuffed minor was seated. SMF ¶¶ 42. Officer Ottmer then gestured towards Plaintiff as Officer Costanzo came closer. SMF ¶ 45. As Officer Costanzo walked towards Plaintiff, he heard Plaintiff talking loudly and agitatedly from his position at the back of platform bench. SMF ¶ 48. Officer Costanzo told Plaintiff and others nearby to back up as he approached. SMF ¶ 44; 46. Plaintiff refused and responded that he did not need to back up because he was in a "public space." SMF ¶ 47. Officers are trained to establish a perimeter around investigation and arrests; this is done for the safety of the subjects, the officers, and the bystanders. Exhibit 12, Declaration of Aaron Donald ("Donald"), ¶¶ 30-33; Exhibit 11, Declaration of Ronald Pavlik, Jr. ("Pavlik"), ¶¶ 20, 21.

Any reasonable officer armed with those facts would believe that Plaintiff was interfering with Officers Ditrick and Ottmer's investigation and detention of the handcuffed minor and rendering the scene unsafe. With Plaintiff standing inches away from the detained minor, talking loudly and agitatedly, Officers Ditrick and Ottmer could not safely undertake any further action with the handcuffed minor.

Officer Costanzo knew that Ottmer had requested additional help from other MTPD officers; Officer Costanzo was dispatched to assist as a priority. SMF ¶¶ 35-37. As Officer

Costanzo approached the bench, Officer Ottmer also gestured to Plaintiff, pointing him out and indicating that Plaintiff was the problem. SMF ¶ 45. These undisputed facts require a finding that Officer Costanzo had probable cause to arrest Plaintiff for resisting arrest when he approached Plaintiff. If conduct goes beyond "speech and mere passive resistance or avoidance, and cross[es] the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty by actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him," the conduct constitutes resisting arrest. *Gayden v. United States*, 107 A.3d 1101, 1104–05 (D.C. 2014). Plaintiff was touching the handcuffed minor – an assault—and gesturing towards the Officers Ditrick and Ottmer while leaning over the bench when Officer Costanzo arrived. ¶¶ 42 -44. Plaintiff was confronting Officer Ditrick and Ottmer at the time of Officer Costanzo's arrival, rendering the scene unsafe and preventing the two investigating Officers from investigating the juvenile's alleged actions.

Even *assuming* Officer Costanzo did not (yet) have probable cause when he first observed Plaintiff standing by the minor, the facts known to him allowed him to lawfully detain Plaintiff. *See Terry v. Ohio*, 392 U.S. 1 (1968). Officers may, without the Fourth Amendment's warrant requirement, conduct brief, investigative "Terry stops," if they have "reasonable articulable suspicion" that criminal conduct has occurred. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, (1968)). The legal standard for an officer to conduct a *Terry* stop is only a "minimal level of justification." *INS v. Delgado*, 466 U.S. 210, 217 (1984).

Officer Costanzo had the lawful authority, at a minimum, to *detain* Plaintiff, so that Plaintiff was not free to leave, whether due to probable cause *or* reasonable articulable suspicion that Plaintiff was committing a crime, had committed a crime, or was about to commit a crime.

*Terry v. Ohio, supra*. Even if Officer Costanzo's legal justification only rose to the level of reasonable articulable suspicion at the time he approached Plaintiff the very first time, his legal justification quickly turned to probable cause after he used minimal force to push Plaintiff away and Plaintiff resisted that effort and then actively struggled against him. SMF ¶¶ 50-62. Plaintiff's additional act of grabbing and pushing Officer Costanzo constitutes an assault on Officer Costanzo. SMF ¶ 57-61.

The undisputed facts show that Officer Costanzo ordered Plaintiff away from the bench to establish a safe perimeter around Officers Ditrick and Ottmer, but Plaintiff refused and resisted. SMF ¶¶ 46-62. These additional facts, added to the totality of circumstances known to Officer Costanzo, provided evidence rising to probable cause, assuming Officer Costanzo only had reasonable suspicion at the time he first approached Plaintiff. SMF ¶¶ 46-62. Plaintiff actively resisted Officer Costanzo's efforts to physically remove him from the area, pushing back against Officer Costanzo, holding on to the back of the bench, struggling against Officer Costanzo, and grabbing his hands. SMF ¶¶ 46-62. Grabbing and pushing someone constitutes criminal assault, and when done to an officer, it becomes the crime of assault on a police officer. *See* D.C. Code § 22-405(b).

Plaintiff's assault of Officer Costanzo provided Officer Costanzo additional probable cause to Plaintiff's arrest Plaintiff for assault on a police officer: "Whoever without justifiable and excusable cause assaults a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor…." D.C. Code § 22-405 (b).

Plaintiff appears to believe, erroneously, that his being in a "public space" prevented Officer Costanzo from taking any action against him. SMF ¶ 47. But "public space" has no role

in this Fourth Amendment analysis.  Even if it did have a role, and even if Plaintiff were correct that his being in a public space somehow immunized him from an officer's right to order him away from an investigative or arrest perimeter, he would still not have legal justification for his using force to resist arrest. "It is not justifiable or excusable for a person to use force to resist an arrest when such an arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful." *See* D.C. Code § 22-405 (d).

Plaintiff continued to struggle against Officer Costanzo even when both Defendants tried to arrest him. SMF ¶¶ 73, 74.  When Officer Ditrick tried to take Plaintiff into custody and handcuff him, Plaintiff continued to struggle against both officers.  SMF ¶¶ 73,74.  Officers Costanzo and Ditrick therefore had probable cause to believe Plaintiff had also committed the crime of resisting arrest by a second set of elements: "[w]hoever without justifiable and excusable cause intentionally resists an arrest by an individual who he or she has reason to believe is a law enforcement officer …shall be guilty of a misdemeanor."   D.C. Code § 22-405.01(b).

Based on the totality of the circumstances, their training and experience, Officers Costanzo and Ditrick had objective facts that would lead any reasonable officer to believe that they probable cause to arrest Plaintiff for the crimes of resisting arrest under§ 22-405.01(b) and assault on a police officer under § 22-405(b). This totality of circumstances requires a finding of probable cause for Officer Costanzo to arrest Plaintiff, either immediately upon arrival, or seconds later, after reasonable, articulable suspicion turned to probable cause within seconds for Plaintiff's resisting arrest and assaulting a police officer.

Plaintiff's claim against Officers Costanzo and Ditrick under 42 U.S.C. § 1983 for unlawful seizure must be dismissed. Defendants possessed probable cause to arrest Plaintiff, and

Defendants and have qualified immunity. Wherefore Defendants move for judgment in their favor on Plaintiff's claim of unlawful seizure under 42 U.S.C. § 1983. (Count One).

> **b.** __The right to be free from arrest under these facts was not clearly established at the time of Defendants' actions__.

Even *assuming* that Defendants were mistaken in their assessment that probable cause existed, their belief that they possessed probable cause was reasonable based on the totality of the circumstances. SMF ¶¶ 1-77. There is no precedent in this Circuit that would put Defendants on notice that they lacked probable cause to arrest Plaintiff under these facts. The courts of this District have, many times described the circumstances and facts that rise to the level of probable cause for resisting arrest. For example, in *Lash v. Lemke*, the D.C. Circuit explained that the facts were sufficient to find that the plaintiff resisted arrest because, "there is no genuine dispute regarding Lash's conduct … [m]ultiple video recordings of the episode make perfectly clear that Lash resisted the officers' efforts to arrest him … [h]e pulled his arms free from the officers' efforts to restrain them twice in succession." *Lash v. Lemke*, 785 F.3d at 6.

In *Campbell v. District of Columbia*, 245 F.Supp.3d 78 (D.D.C. 2017), the court similarly relied on surveillance video to decide whether probable cause existed for an officer to arrest a subject for resisting arrest. The arresting officer was seen in the video facing the suspect, and then grabbing the suspect's right arm to hold him in place for an investigatory stop. *Id*. at 88. The suspect "immediately proceeded to jerk towards the open doorway while forcefully pushing Officer Newton's hands away." *Id*. Another officer helped and both attempted to have the suspect lean over onto a structure of the store, but the suspect continued to resist by using his hands to push the officers away. *Id. The Campbell* court held that the suspect's actions gave the officer probable cause to arrest for resisting arrest. *Id.* Here, even if Officer Costanzo only had

- 14 -

reasonable suspicion when he approached Plaintiff and ordered him to move away and pushed Plaintiff from the bench, Officer Costanzo's would have had his reasonable suspicion develop into probable cause when Plaintiff resisted and grabbed his hands – just like the officer in Campbell.

*Lash* and *Campbell*, *supra,* are two of many cases that factually like that of the instant case, where courts in this Circuit have held that police officers had probable cause to arrest. These cases do not give any notice to Defendants their actions were violating any "clearly established" law; instead, the cases support Defendants' assessment that probable cause did exist.

In *White v. Pauly* ___ U.S. ___, 127 S. Ct. 548, 551 (2017), the Supreme Court held that the Tenth Circuit incorrectly applied the "clearly established law" standard and overturned the Tenth Circuit's decision denying qualified immunity to an officer. *Id*. The "clearly established law" analysis requires that there be a prior case involving an officer in similar circumstances, acting similarly to defendants in a particular case. *Id.* at 552.  The *Pauly* decision specifically rejected reliance on general legal principles, such as those found in *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Graham v. Connor*, *supra*, for evidence of "clearly established law."  *Id.*

In *Wesby, supra*, the Supreme Court held that MPD police officers were entitled to qualified immunity because the plaintiff-partygoers failed to identify "a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation "under similar circumstances." *District of Columbia v. Wesby*, 138 S.Ct. at 591. If no such precedent exists, showing a Fourth Amendment violation under similar circumstances, officers must be granted qualified immunity. *Id.*

Defendants Costanzo and Ditrick are entitled to qualified immunity in their arrest of Plaintiff, because a reasonable officer, with the information that Defendants possessed, could

have believed Plaintiff's arrest lawful. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). If Defendants mistakenly, but reasonably, concluded probable cause was present, or that their force was reasonable, they are still entitled to qualified immunity. *Id.*

Plaintiff cannot meet his burden of showing any constitutional violation under either prong of the two-part test, because Officers Costanzo and Ditrick had probable cause to arrest Plaintiff. *Assuming* a constitutional violation occurred because no probable cause existed for Plaintiff's arrest – which Defendants deny – Defendants would still have a right to qualified immunity because no precedent shows the Defendants were violating a "clearly established" rule. Accordingly, Defendants move for judgment in their favor on Plaintiff's claim of unlawful seizure under 42 U.S.C. § 1983 (Count One).

### 2. Qualified Immunity Bars Plaintiff's Excessive Force Claim
#### a. <u>Defendants' use of force was objectively reasonable</u>.

All of Defendants' use of force when arresting Plaintiff was objectively reasonable. Claims based on a police officer's use of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [one's] person" are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Conn*or, 490 U.S. 386, 388 (1989). An officer's right to "make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. A court must consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

An officer's right to use objectively reasonable force attaches not only to arrests, but to *Terry* stops or investigative detentions. The amount of force that the officers may reasonably use during a *Terry* stop depends on the same factors as for an arrest. *See, e.g.*, *Hargraves v. District of Columbia*, 134 F.Supp.3d 2015. *See also, United States v. Wilson, No.* 11–0275, 1994 WL 408264, at *2 (D.C. Cir. May 5, 1994) (per curiam)(if police could not use some amount of force to restrain a detainee when needed, *Terry* stops would be outlawed).

It is well-settled that "an officer has the authority to use some degree of physical coercion or threat thereof during the course of an arrest, and not every push or shove, even if it may later seem unnecessary … violate[s] the Fourth Amendment." *Dormu v. D.C.*, 795 F Supp. 2d 7, 21-22 (D.D.C. 2011) (*citing Rogala v. D.C.,* 161 F. 3d 44, 55 (D.D.C. 1998) (quoting *Graham,* 490 U.S. at 395-97)). "In determining whether an officer's use of force was reasonable … [t]he severity of the injury the plaintiff suffered is also relevant." *Id.* (citing *Wardlaw v Pickett,* 1 F.3d 1297, 1304 n. 7 (D.C. Cir. 1993) ("stating that although the severity of injury is not by itself the basis for deciding whether the force used was excessive … it is a relevant factor.")). "An officer will be found to have used excessive force only if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Garay v. Liriano,* 943 F. Supp. 2d 1, 19 (D.D.C. 2013).

Plaintiff alleges that Officers Costanzo and Ditrick violated his Fourth Amendment rights under 42 U.S.C. § 1983 when they allegedly used excessive force in arresting him. *See* Complaint, Count One, ECF #1. MTPD investigated Officer Costanzo's use of force pertaining to his arrest of Plaintiff and his deploying his Conducted Electronic Weapon ("CEW"). Exhibit

12, Declaration of A. Donald ("Donald"), ¶¶ 9-11.  MTPD, through its Office of Professional Responsibility and Inspections ("OPRI"), concluded that Officer Costanzo's use of his CEW reflected MTPD's policy and training.  Id., ¶¶ 25,26, 50,51. The then-Chief of Police accepted and approved the investigation and its findings that MTPD's General Order 132 pertaining to CEWs allows officers to deploy CEWs for active resistance and for subjects who pose a threat. Exhibit 11, Declaration of Pavlik, ¶¶ 32-33.  *See* Exhibit 13, Conducted Electronic Weapon.

In *Lash v. Lemke,* the D.C. Circuit held that a U.S. Park police officer who deployed her Taser on a subject who was resisting arrest did not use excessive force. The D.C. Circuit relied on video evidence in arriving at its decision that no excessive force was used in deploying the Taser.[1] *Lemke*, 786 F.3d at 6.  Lash was part of the Occupy DC encampment at McPherson Square that ripped down some notices the officers had posted and then walked away as the officers followed him. *Id.* at 1-4*.;* Two officers approached and grabbed Lash from behind when Lash made two attempts to pull away from their grasp. A third officer deployed her Taser against Lash during the encounter. *Id.*

The decision in *Lash* turned on the question of whether Lash was resisting arrest at the time he was tased. *Id.* at 6. The video evidence showed: (1) Lash pulled his arms free from the officers' grasp twice; (2) he tried to remain upright when the officers tried to force him to the ground; and (3) he did not allow the officers to move his arms behind his back to handcuff him. *Id.* The D.C. Circuit relied completely on the video evidence in its ruling, rejecting as "visible fiction" Lash's protestations that he did not resist arrest.  *Id*. at 7.  The D.C. Circuit held that the force used by Officer Lemke violated no clearly established law and she was entitled to qualified

---

[1] The video footage, described in detail in the Court's opinion, may be seen on the internet at the following IP address:  https://www.youtube.com/watch?v=DrsAgDdbE3I&feature=emb_logo

immunity.   Plaintiff also resisted arrest like Lash.   Unlike Lash, Plaintiff also assaulted Officer

Costanzo while resisting.   SMF ¶ 57-61.

Other examples of force in this Circuit which have been held to be objectively

reasonable, involved facts with either similar, or more force, than the force used here.   In *Cutchin*

*v. District of Columbia*, *supra,* two officers, who arrested a subject for fare evasion, pinned a

suspect to the ground using an officer's full body weight while squeezing the handcuffs, were

held to have used reasonable force. *Cutchin,* 369 F.Supp.3d at 128.   Although the plaintiff may

have experienced pain or discomfort, the *Cutchin* court held that the plaintiff's pain and

discomfort did not render the officers' use of force unreasonable. *Id*.

In *Cromartie v. District of Columbia*, 479 F. App'x 355, 357 (D.C. Cir. 2012) (per

curiam), the plaintiff was pushed to the ground by officers and forcibly kept there while

handcuffed, but the officers' use of force was held to be no more than the ordinary type of force

used by officers in effecting an arrest. *Id.*   In *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C.

Cir. 2011), the court ruled that the officers' use of force was not excessive where the plaintiff's

arm was pulled behind her back and she was pushed against a stone column. *Id.* In *Wasserman v.*

*Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009), the arresting officer applied force to the

plaintiff's arm when plaintiff was not resisting or moving; the court held that the force was not

excessive because officers have the authority to use some "degree of coercion" to gain

compliance in effecting an arrest. *Id.*   In *Goolsby v. District of Columbia*, 317 F.Supp.3d 582,

594-95 (D.D.C. 2018), the court found that the arresting officer did not use excessive force when

he allegedly slammed the plaintiff to the ground and twisted the plaintiff's arms to handcuff him.

*Id*.

Here, Officer Costanzo deployed his CEW against Plaintiff three times; the first two deployment had no visible effect on Plaintiff, failing to gain Plaintiff's compliance by causing neuromuscular incapacitation ("NMI"). SMF ¶¶ 67-72. MTPD trains its officers that if they deploy their CEW cartridges less than seven feet from their target, they run the risk that the prongs will fail to attach to a subject. SMF ¶¶ 68-69. On his third CEW deployment, Officer Costanzo used his CEW in "drive-stun" mode, as he no longer had any cartridges. SMF ¶¶ 75-6. On his third deployment, Officer Costanzo placed the CEW on Plaintiff's leg while Plaintiff was on the ground actively resisting arrest. SMF ¶ 75. After Officer Costanzo used the CEW in drive-stun mode, Plaintiff quickly rolled over to his back and stopped struggling. SMF ¶ 77.

Because Officer Costanzo's first two attempts at using his CEW failed, he effectively only used his CEW once against Plaintiff. He and Officer Ditrick were able to quickly handcuff Plaintiff and take him into custody after the third CEW deployment. Officer Costanzo's single effective use of his CEW is like the facts in *Lemke, supra*, where the officer who deployed her Taser once against a resisting protester did not engage in excessive force. *Lash v. Lemke,* 786 F.3d at 6.

After Plaintiff was handcuffed and arrested, Officer Costanzo called EMTs to check on Plaintiff. SMF ¶ 78. Plaintiff did not have any CEW prongs in his skin, just in his clothing. SMF ¶ 79. Plaintiff refused any medical treatment. SMF ¶¶ 80-1. He walked out of the Metro station under his own power and without any problems. Exhibit 2, Costanzo Declaration at ¶ 39.

Defendants' use of force in taking Plaintiff into custody confirmed with *Graham's* objective reasonableness standard, considering the three factors of: severity of crime, resisting arrest and posing a threat: 1) here there was probable cause for more than one crime; 2) Plaintiff can be seen on video resisting Office Costanzo; and 3) Plaintiff is seen advancing towards

Officer Costanzo aggressively, and assaulting him. SMF ¶¶ 42-62. The last two factors lean heavily in favor of Defendants' use of force. Additionally, Defendants' use of force is consistent with, and tracks with other examples of, uses of force held to be objectively reasonable. *See, e.g., Lemke, Cromartie, Cutchin, Hargraves, Goolsby, supra.*

Plaintiff's claim that Officers Costanzo and Ditrick engaged in excessive force is belied by the objective video evidence, which shows that Plaintiff immediately began to resist Officer Costanzo's efforts to move him away from the area of the handcuffed minor, held onto the bench, grabbed Officer Costanzo's arm and pushed him, and advanced towards Officer Costanzo aggressively. In response to Plaintiff's actions, Officer Costanzo tried to deploy his CEW against Plaintiff three times, where the CEW failed on two of those occasions. SMF ¶¶ 63-77. The actual force used against Plaintiff was a one-time drive-stun deployment, pushing and handcuffing. *Id*. All these actions fall in the realm of accepted police procedure and policy under these facts. *See, e.g., Lemke, Cromartie, Cutchin, Hargraves, Goolsby, supra.*

The video evidence shows a demonstrably different story than the one Plaintiff alleges in his Complaint. Like the D.C. Circuit *in Lash v. Lemke, supra*, this Court faces video evidence that discredits Plaintiff's allegations, rendering his excessive force allegations a "visible fiction." Because Defendants' use of force is objectively reasonable, Plaintiff cannot meet the first of the two prongs to overcome qualified immunity: there is no constitutional violation in Defendants' use of force. For these reasons, judgment must be granted in favor of Defendants on Plaintiff's claim of excessive force under 42 U.S.C. § 1983. Accordingly, Defendants move for judgment in their favor on Plaintiff's claim of excessive force under 42 U.S.C. § 1983 (Count One).

### b. There Is No Clearly Established Right To Be Free From Force Used By Defendants Against Plaintiff

Assuming that Plaintiff were to make a showing that Defendants used excessive force against him, he would still have to prove the second prong of qualified immunity, that the right to be free of that force under similar facts was a clearly established right. But no such precedent exists.

In an excessive force claim, an officer will be held liable only "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Rogala v. District of Columbia* 161 F.3d at 54. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is actionable under the Fourth Amendment. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

In *Armbruster v. Frost*, the District Court reviewed allegations that the plaintiff was brought to the ground by an officer; while a second officer secured plaintiff's right arm, the first officer placed his knee over her left arm and then on her back while handcuffing her. *Id.* The Court held that no excessive force occurred under the facts of that case. *Id. The* Court explained that since the officers had not been successful in subduing the plaintiff earlier, it was reasonable to take additional action to restrain the Plaintiff. *Armbruster v. Frost*, 962 F.Supp.2d 105, 114 (D.D.C. 2013). *Id.*

Officer Costanzo also had not been successful in subduing Plaintiff in his first two CEW deployments, which failed to work. SMF ¶¶ 63-77. Cases in this jurisdiction do not put Officer Costanzo on notice that it would be unreasonable for him to take additional action to subdue Plaintiff where earlier attempts using a CEW failed to work.

Summary judgment based on qualified immunity is appropriate if the established law fails to put the officer on notice that his actions would be clearly unlawful. *Saucier v. Katz,* 533 U.S. 194, 202 (2001). Qualified immunity protects an officer if the officer "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198, (2004) (*per curiam*) (*citing Saucier,* 533 U.S. at 206). The standard of objective reasonableness applies to an officer's actions, in the framework of the legal rules that were clearly established. *Corrigan v. Glover*, 254 F.Supp.3d 184, 193 (D.D.C., 2017) (internal citations omitted). "[W]hile an officer's subjective state of mind is not relevant to the qualified immunity inquiry, the officer's perceptions of the objective facts animating the challenged conduct are." *Id.* Defendants move for judgment on their favor on Plaintiff's claim of excessive force under 42 U.S.C. § 1983 (Count One).

**B. This Court Should Exercise Supplemental Jurisdiction Because Plaintiff's Common Law Claims Derive From The Same Common Nucleus Of Operative Fact As Plaintiff's Federal Claim And Because Judicial Economy And Fairness Would Be Favored.**

Should this court grant Defendants' motion for summary judgment as to Plaintiff's federal claims, there are three common law claims over which this should exercise supplemental jurisdiction. Those claims are false arrest, assault and battery, and malicious prosecution. *See* Complaint, ECF #1. To exercise supplemental jurisdiction, this Court must determine whether the state and federal claims derive from the same common nucleus of facts. They do.

Plaintiff's common law claims arise out of the same incident as his federal claims because both types of claims are based on assertions that Defendants lacked probable cause to arrest him and that Defendants used force against him that was excessive when he was arrested

by Defendants on June 22, 2019, at the U Street Metrorail station. *Id*.   Because Plaintiff's federal and common law claims both arise from a less than a ten-minute period at the Metrorail station that day, the claims form one constitutional case.   *See*, *e.g.*, *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164-65 (1997).   The three remaining common law claims raise no novel or complex issues of state law; in fact, the standards for the common law claims are like those of the federal law claims. Principles of judicial economy and fairness strongly favor this Court exercising supplemental jurisdiction over the common law counts of false arrest, assault and battery, and malicious prosecution.   *See Burney v. Suggs*, No. 1:21-cv-01087, 2022 U.S. Dist. WL 4355279, at *8 (D.D.C  Sept 20, 2022)..

### C.  Plaintiff's Claim For False Arrest (Count Two) Fails Because Defendants Had Probable Cause.

Under District of Columbia common law, the tort of false arrest is based on unlawful detention.  *See*, *e.g.*, *Bradshaw v. District of Columbia,* 43 A.3d 318, 322, n.7 (D.C. 2012) (internal citations omitted).   "[T]he relevant inquiry in a false arrest defense is not what the actual facts may be but rather what the officers could reasonably conclude from what they were told and what they saw on the scene." *Enders v. District of Columbia*, 4 A.3d 457, 470-71 (D.C. 2010).   "The focal point of the [tort of false arrest] is the question whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged, and the action fails." *Dellums v. Powell*, 566 F.2d 167, 175, (D.C. Cir. 1977).

In defense to the common law cause of action of false arrest, an officer can assert the existence of probable cause; this can be done by either showing that: (1) the arrest meets the objective standard for probable cause; or (2) by a partially subjective test. *District of Columbia v. Murphy,* 635 A.2d 929, 932 (D.C.1993). Under the objective probable cause test, if a police

officer meets the constitutional standard of probable cause to arrest, the same objective standard used to determine probable cause in a criminal proceeding, then the arrest is lawful, and the officer has a complete defense to any false arrest claim. *Id*. at 931–32. The probable cause test is based entirely on objective facts. *Id.*

Officers Costanzo and Ditrick had constitutional probable cause to arrest Plaintiff. S*ee* Section IV.A(1)(a), which Defendants expressly incorporate herein. They had probable cause to arrest Plaintiff for resisting arrest and for assault on a police officer. *See* Exhibit 4, Station Video, PW -37 at 17:50 – 53; SMF ¶ 1-62.

The partially subjective test for probable cause also provides a police officer's defense to a false arrest claim. *Id.* Under this test, "it will suffice if the officer can demonstrate that (1) he or she believed, in good faith, that his [or her] conduct was lawful, and (2) this belief was reasonable." *Id.*

Both Defendants believed that their actions were lawful and their belief in the lawfulness of their actions is a good faith belief. Exhibit 2, Declaration of Costanzo, ¶¶ 18-9, 31, 33; Exhibit 3, Declaration of Ditrick, ¶¶ 13; SMF ¶¶1-62. Their actions were deemed to conform to MTPD policy and training, and the objective video evidence shows that Plaintiff resisted arrest and assaulted Officer Costanzo. *See* Exhibit 12, Declaration of Donald, ¶¶ 51; Exhibit 11, Declaration of Pavlik, ¶¶ 32, 33.

Officers Costanzo and Ditrick reasonably believe that they had probable cause, under the totality of the circumstances, and based on their training and experience in policing, that Plaintiff had committed several crimes. SMF ¶¶ 1-62. Judgment must be granted to Defendants because Defendants had probable cause to arrest Plaintiff, in both the constitutional and the good faith

sense.  Wherefore, for the reasons stated, Defendants move for judgment in their favor on Plaintiff's claim of false arrest (Count Two).

### D.  Defendants' Actions Were Reasonably Necessary and Privileged, Requiring Dismissal of Plaintiff's Assault And Battery Claim (Count III)

Assault and battery, although often joined in a single claim, are still two "conceptually distinct" torts under District of Columbia law. *District of Columbia v. Chinn*, 839 A.2d at 706 n.2 (D.C. 2003).  A battery is an intentional act, causing "harmful or offensive bodily contact." *Id*. (internal citations omitted). An assault is an "intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *Id.* at 705 (internal citations omitted). There is no evidence or allegation of any "threat" against Plaintiff; only the force used against Plaintiff during his arrest, *i.e,* an alleged battery.

It is well-settled law that any officer who effects *any arrest* commits a battery. *Id*. at 706. (emphasis added).  When the officer only uses the amount of force that the officer reasonably believes is necessary, the officer will be "clothed with privilege" for that "battery."  *Id.* "This standard is similar to the excessive force standard applied in the Section 1983 context." *Rogala v. District of Columbia*, 161 F.3d at 57. Consistent with Fourth Amendment standards, the reasonableness of the officer's force must be judged from the perspective of a reasonable officer on the scene. *Chinn*, 839 A.2d at 706 (internal citations omitted).

Defendants expressly incorporate their arguments from Section IV(A)(2)(a), *supra*, regarding the objective reasonableness of the force they used against Plaintiff. *See also* Exhibit 4, Station Video, Camera PW-037 at 17:50 -17:54.

Defendants took no actions against Plaintiff other than those that were legally justified, *i.e.*, using the drive stun mode of the Taser against Plaintiff's leg, which does not cause neuro-

muscular incapacitation, and handcuffing the Plaintiff.  Defendants have a qualified privilege defense against civil assault and battery under these facts.  "District law provides a government actor with a privilege defense to such tort claims when (1) he or she believed, in good faith, that his or her conduct was lawful, and (2) [his or her] belief was reasonable." *Hargraves v. D.C.,* 134 F. Supp. 3d at 90.

Given the video evidence and the uncontested facts here, and the case law of this Circuit, which has held similar uses of force as in this case to be reasonable, Officers Costanzo and Ditrick reasonably believed their conduct was lawful and reasonably necessary, as would any objectively reasonable police officer who was similarly situated.  Exhibit 2, Declaration of Costanzo, ¶ 31; Exhibit 3, Declaration of Ditrick, ¶¶ 11, 13; SMF ¶¶1-62. The D.C. Circuit has held that an officer is justified in using a Taser against subject who is resisting arrest. *See Lash v. Lemke, supra*. In light of the holdings in other cases in this Circuit involving similar use of force, neither Officer Costanzo nor Office Ditrick would have any reason to consider their acts an objectively unreasonable use of force, where Plaintiff multiple times physically resisted Officer Costanzo's attempts to move him from where Plaintiff was standing, inches away from the detained minor, advanced aggressively towards Costanzo, and assaulted him.  SMF ¶¶ 1-62.

The D.C. Circuit has previously held officers who tased an arrestee who was resisting arrest was objectively reasonable.  Nor would the ruling of *Lash v. Lemke* give Officer Costanzo any reason to believe his conduct was unreasonable.  The Defendants reasonably believed that their actions were lawful*. Id*. Any officer confronted with the same facts and circumstances would also believe them to be reasonable and lawful under the circumstances. Wherefore, Defendants move that Plaintiff's claim for assault and battery be dismissed and judgment granted in their favor.

### E.  Plaintiff Fails To Prove The Elements of Malicious Prosecution

To prove malicious prosecution under District of Columbia law, "there must be (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) malice, or a primary purpose in institution the proceeding other than that of bringing an offender to justice." *Amobi v. District of Columbia Dep't of Corr.*, 755 F. 3d 980, 991 (D.C. Cir. 2014); *DeWitt v. District of Columbia*, 43 A.3d 291, 296 (D.C. 2012).

Plaintiff cannot meet the elements of this claim.  Plaintiff admits that charges against him were dismissed by the prosecutor. SMF¶ 82. A *nolle prosequi* (dismissal) cannot provide the basis for a claim of malicious prosecution because it does not constitute a "termination in favor of the accused," one of the required elements of the claim.  *Auerbach v. Freeman*, 43 App. D.C. 176 (1915) (larceny was *nolle prossed* and therefore there was no institution of charges); *Dellums v. Powell*, 566 F.2d 167, 192 (D.C. Cir. 1977). The termination must "'reflect on the merits of the underlying action.'" *Kenley v. District of Columbia*, No. CV 14-1232 (JEB), 2015 WL 1138274, at 13-14 (D.D.C. Mar. 13, 2015) (quoting *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986). *A nolle prosequi* does not meet the requirement of a favorable termination of the criminal action. *Id*.

Defendants also had probable cause to arrest Plaintiff, which defeats Plaintiff's ability to meet the third element of this claim. *See* Section IV(A)(1)(a), *supra*). Defendants expressly incorporate their arguments in Section IV(A(a)(a) herein.  Moreover, Defendants did not institute any proceedings against Plaintiff. SMF ¶¶ 83-4.  Officer Ditrick did not have any interaction with Plaintiff after Plaintiff was taken into custody.  SMF  83. Officer Costanzo, who has a K-9 in his vehicle, did not even transport Plaintiff to the MPD District station for processing.  Exhibit 2,

Declaration of Costanzo, ¶ 40.   Officer Costanzo had no interaction with Plaintiff after Plaintiff was transported from the U Street Metrorail station.  *Id*. at ¶ 43.  Neither Defendant participated in or initiated any criminal proceeding.  *Id.*; Exhibit 3, Declaration of Ditrick,  ¶ 15.

As to the fourth element of malice, Judge Jackson-Brown noted *in Smith v. United States*, 121 F.Supp.3d 112, 122-23 (D.D.C. 2015) that "a prosecution is not considered unlawfully malicious" if the belief from which the prosecution flows "turns out to be unfounded[,] as long as it is not unreasonable." *Id.*  Defendants, even though they did not institute any criminal proceeding against Plaintiff – that decision belongs with the prosecutor --- nonetheless reasonably believed, based on Plaintiff's objective actions as documented on video, that Plaintiff had committed several crimes in their presence. For these reasons, Plaintiff cannot meet the element of malice.

Wherefore, for these reasons, Defendants request that judgment be granted in their favor and that Plaintiff's common law claim of malicious prosecution be dismissed.

## V.     CONCLUSION

Wherefore, for all these reasons, and for other and such good cause as this Court deems necessary, Defendants Costanzo and Ditrick move that all four counts of Plaintiff's Complaint be dismissed as a matter of law and judgment granted in their favor, and that Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted,

/s/ Janice L. Cole
Janice L. Cole #440351
Senior Counsel II
300 7th Street, S.W.
Washington, D.C.  20001
jlcole@wmata.com
(202) 962-2543

 /s/ Neal M. Janey, Jr.
Neal M. Janey, Jr., Bar No.:  995449
Senior Counsel II
300 7th Street, S.W.
Washington, D.C.  20001
Telephone: (202) 962-1067
Facsimile:  (202) 962-2550
Email: nmjaney@wmata.com

Counsel for Defendants Costanzo and Ditrick