**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TAPIWA MUSONZA** )<br>)<br>  **Plaintiff** )<br>)<br>    **v.** )<br>)<br>**OFFICER COSTANZO, et al.** )<br>)<br>)<br>  **Defendants.** )<br>_____) | **CIVIL ACTION NO. 1:19-cv-02779-JMC** |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION**

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................................2

Introduction.................................................................................................................5

Background...................................................................................................................5

Legal Argument...........................................................................................................6

**<u>TABLE OF AUTHORITIES</u>**

**<u>Page(s)</u>**

**FEDERAL CASES**

*Amobi v. D.C. Dep't of Corrections*, 755 F.3d 980 (D.C. Cir. 2014) .......................................... 12

*Barham v. Ramsey*, 434 F.3d 565, 572, 369 U.S. App. D.C. 146 (D.C. Cir. 2006) ................... 11

*Bolger v. District of Columbia*, 608 F. Supp. 2d 10, 18 (D.D.C. 2009) ..................................... 11

*Burke v. Gould*, 286 F.3d 513, 517, 351 U.S. App. D.C. 1 (D.C. Cir. 2002) .................................. 8

*Campbell v. D.C.*, 245 F. Supp. 3d 78 (D.D.C. 2017) ........................................................ 27, 28, 29

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ............. 9

*Doe v. District of Columbia*, 796 F.3d 96, 104, 418 U.S. App. D.C. 96 (D.C. Cir. 2015) ........ 26

*Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011) ............................. 9, 11, 29

*Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902 (4th Cir. 2016) ........................ 26

*Etheredge v. D.C.*, 635 A.2d 908 (D.C. 1993) ................................................................. 32

*Fenwick v. Pudimott*, 778 F.3d 133 (D.C. Cir. 2015) ..................................................... 22

*Flythe v. D.C.*, No. CV 10-2021 (RC), 2016 WL 4506965 (D.D.C. Aug. 26, 2016) ................... 24

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ......................................................................... 29

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................... 11, 12

*Hall v. D.C.*, 867 F.3d 138, 157 (D.C. Cir. 2017) ............................................................ 12

*Halcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 20 (D.D.C. 2007) ...... 24

*Halcomb v. Woods*, 767 F. Supp. 2d 123 (D.D.C. 2011) ................................................. 25

*Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) ........................ 10

*Jiggetts v. Cipullo*, 285 F. Supp. 3d 156 (D.D.C. 2018) ................................................. 24

*Johnson v. D.C.*, 528 F.3d 969 (D.C. Cir. 2008) ........................................................... 23

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ..................................................................... 22

*Lash v. Lemke*, 786 F.3d 1 (D.C. Cir. 2015) ............................................................ 10, 21

*Martin v. Malhoyt*, 830 F.2d 237 (D.C. Cir. 1987) .................................................. 10, 28

*Mazloum v. D.C. Metro. Police Dep't*, 576 F. Supp. 2d 25 (D.D.C. 2008) ........................ 28

*McKoy v. D.C.*, No. CV 18-416 (RBW), 2021 WL 270397 (D.D.C. Jan. 27, 2021) ................... 22

*Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) ............................................. 10, 15, 33

*Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604, 390 U.S. App. D.C. 178 (D.C. Cir. 2010) ................................................................................................................................ 7

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ........................................................ 9, 22

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................... 10, 24

*Scales v. D.C.*, 973 A.2d 722 (D.C. 2009) ...................................................................... 31

*Scott v. Harris*, 550 U.S. 372 (2007) ............................................................................. 9, 21

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) .................................. 24

*Thompson v Clark*, 142 S. Ct. 1332 (2022) ................................................................. 29, 30

*Turpin v. Ray*, No. CV 19-2394 (RC), 2020 WL 1510412 (D.D.C. Mar. 30, 2020) ...................... 11

*Williams v. D.C.*, 268 F. Supp. 3d 178 (D.D.C. 2017) ...................................................... 10

*Wingate v. Fulford*, 987 F.3d 299, 311 (4th Cir. 2021) .................................................... 8

*Yates v. Terry*, 817 F.3d 877, 886 (4th Cir. 2016) .......................................................... 25

*Young v. D.C.*, 322 F. Supp. 3d 26 (D.D.C. 2018) .......................................................... 22

Statutes:                                                                   Page(s)

Federal Rule of Civil Procedure 56(a) ........................................................................ 6

 42 USC §1983 ....................................................................................................... 16, 30

## I.    INTRODUCTION

This case stems from MTPD's brutal assault of a 14-year old boy of which Plaintiff was a witness and bystander on June 22, 2019.  After engaging the officers to treat the boy in a more humane and safe manner as a way to calm down the increasingly agitated crowd, a uniformed transit police officer came onto the scene and violently shoved Mr. Musonza multiple times and then tased and arrested him for assaulting a apolice officer, among other false charges.  This suit followed. Defendants now move for summary judgment arguing that they are entitled to qualified immunity.  However, in support of their brief, they have snipped screenshots of the video evidence, that when viewed in full, contradicts their fictitious narrative.  All told, there is sufficient evidence to find Defendants liable to Mr. Musonza for excessive force, false arrest and the other claims pleaded in his complaint. The factual disputes amongst the parties will need to be resolved by a jury.  Therefore, this court cannot grant qualified immunity.

## II.    BACKGROUND

Plaintiff is a 33-year old man who was unlawfully apprehended, battered and tased after he asked police officers to treat a young boy in a more humane fashion and attempted to calm down his friends who were protesting the boy's treatment.  Plaintiff was attending a paid course at MIT at the time of the assault.  As a result of the damages he suffered after being violently accosted by Defendants, he was forced to drop out of his program at MIT.[1]

---

[1] Defendant's claim that Mr. Musonza attended a free course is provably false.  **Ex. 5.**  Mr. Musonza not only paid for the course, but the course is more expensive today. Defendant cites to a link that shows an entirely different course from the one that Mr. Musonza took.

He was diagnosed with various illnesses, including post-traumatic stress disorder, depression and others. His career and life have been totally derailed by Defendants' reckless actions.

### III. LEGAL ARGUMENT

Plaintiff's claims under 42 U.S.C. § 1983 pertain to two independent constitutional violations: violation of his Fourth Amendment rights by using excessive force, and violation of his Fourth Amendment rights by arresting him without probable cause. *See Goolsby v. District of Columbia*, 317 F. Supp. 3d 582, 591 (D.D.C. 2018) (each § 1983 violation requires a separate inquiry). Plaintiff also presented state common law causes of action of false arrest, assault and battery, and malicious prosecution. Defendants have moved for summary judgment on all claims. Defendants' Motion misstates the law and the facts and should be denied in its entirety.

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Burke v. Gould*, 286 F.3d 513, 517, 351 U.S. App. D.C. 1 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson*, 477 U.S. at 248. A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the non-movant and believe the non-movant's evidence. *Id.* at 255. The court will not, however, make credibility determinations or weigh the evidence. *Id.* at 249. Thus, the Court does not "'determine the truth of the matter,' but instead decide[s] only 'whether there is a genuine issue for

trial.'" *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604, 390 U.S. App. D.C. 178 (D.C. Cir. 2010) (quoting Anderson, 477 U.S. at 249).

Here, the Defendants' skewed recitiation of the facts is easily refuted by the video evidence when it is reviewed in motion and in conjunction with the video taken by a bystander who captured audio of the incident. Defendants are so hard-pressed to argue that they are entittled to judgment as a matter of law that they resorted to snipping select still shots of the footage to distort the facts in an attempt to frame Mr. Musonza as an aggressive Black male who angrily confronted Defendants and was so out of control that he needed to be tased, arrested and charged with several crimes that he did not committ. Their attempt fails as discussed in this motion.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A moving party may succeed by pointing to the absence of evidence proffered by the non-moving party. *Id.* at 322, 325.

Mr. Musonza's evidence consists of the actual footage, plus the footage taken by a bystander named Chem'ere Jones[2]—the only footage that contains audio of the scene—

---

[2] The video was posted to the account of a Neka Phelps and has been uploaded to a flash drive for the court's review.

that clearly refutes the self-defeating narrative set forth by Defendants.[3]  As such, their arguments do not prevail.

To defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials.  *Id.* at 324. Instead, the non-moving party must provide affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011).  As indicated above, Mr. Musonza's own affidavit along with the video evidence establishes that there is a suffcent factual dispute to send this case to a jury.

1. **Legal Standard for Qualified Immunity**

The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231(2009). Qualified immunity only protects government officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Wingate v. Fulford*, 987 F.3d 299, 311 (4th Cir. 2021) (citing *Harlow v. Fitzgerald*,

---

[3] The Plaintiff has filed a motion for leave to send the court these files via USB because they are too large to upload to ECF. They are labeled on the USB and can be identified by the second set of characters in each link as indicated here in addition to the only video with audio:
   1. USTR 6-22-19 1740-1840 HRS DL__C-E03-PW-036_Saturday June 22 2019231820 b334433
   2. USTR 6-22-19 1740-1840 HRS DL__C-E03-PW-037_Saturday June 22 2019231820 4228132
   3. USTR 6-22-19 1740-1840 HRS DL__C-E03-PW-040_Saturday June 22 2019231820 9e07ecc
   4. Neka Lovely Phelps was live.

457 U.S. 800, 818 (1982)). To establish that they are entitled to qualified immunity, the defendant must establish that (1) no constitutional right was violated, or (2) that the right was not clearly established at the time that the violative conduct occurred. *Pearson*, 555 U.S. at 223.

### 2. Legal Standard for Video Evidence

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, (2007), and "when a non movant's account of the facts is "utterly discredited" by the clear evidence provided by a video recording, the Court has instructed [] not to rely on a "visible fiction" but rather "view[] the facts in the light depicted by" the video record. *Lash v. Lemke*, 415 U.S. App. D.C. 158, 163, 786 F.3d 1, 6 (2015).

### 3. Legal Standard for Probable Cause

It is well settled that an arrest without probable cause violates the fourth amendment." *Martin v. Malhoyt*, 830 F.2d 237, 262, 265 U.S. App. D.C. 89 (D.C. Cir. 1987). Probable cause is determined on the basis of the "totality of the circumstances," *see Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), which requires that "the police had enough information to warrant a man of reasonable caution in the belief that a crime has been committed and that the person arrested has committed it," *Barham v. Ramsey*, 434 F.3d 565, 572, 369 U.S. App. D.C. 146 (D.C. Cir. 2006) (internal quotations omitted); *Bolger v. District of Columbia*, 608 F. Supp. 2d 10, 18 (D.D.C. 2009)

The probable cause inquiry is a mixed question of law and fact, and "only where the facts are undisputed or clearly established does probable cause become a question of law for the court." *Amobi v. District of Columbia Dep't of Corrections*, 755 F.3d 980, 990 (D.C. Cir. 2014) (internal citation omitted). "Probable cause may not rest on a 'mere suspicion' of criminal activity," *Williams v. District of Columbia*, 268 F. Supp. 3d 178, 189 (D.D.C. 2017) and as a matter of law, an arrest for resisting arrest is not lawful unless the arrest that was supposedly resisted was itself authorized, either by way of an arrest warrant or by the existence of probable cause. *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997)("Since there was no warrant here, and the jury found no probable cause to arrest Murphy for assault or disorderly conduct, the officers were without authority to arrest Murphy for resisting arrest.")

IV.     **The Record Permits a Reasonable Jury to Find Defendants Liable for Arresting Plaintiff and Using Excessive Force Under 42 U.S.C. § 1983**.

Under 42 U.S.C. § 1983, individuals may bring suits against individual officers for violations of the Fourth Amendment. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses "the plain right to be free from the use of excessive force in the course of an arrest." *Dormu v. D.C.*, 795 F. Supp. 2d 7, 18 (D.D.C. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). "[I]f an excessive force claim turns on which of two conflicting stories best captures what happened on the street," summary judgment must be denied. *Saucier v. Katz*, 533 U.S. 194, 216 (2001) (Ginsburg, J., concurring in the judgment). Because Defendants' argument ignores well-settled law and presents a

version of events that ignores practically all of Plaintiff's record, their Motion must be denied.

## A. **A Reasonable Jury Could Find that Defendants' Actions Were Unreasonable Under *Graham vs. Connor*.**

The Supreme Court's holding in *Graham v. Connor*, 490 U.S. 386 (1989), is the key to determining whether an officer's use of force was excessive under the circumstances. *Graham* directs courts assessing excessive force claims to evaluate the following contextual factors: the severity of the crime at issue, whether the plaintiff posed an immediate threat to the officer's or others' safety, and whether the plaintiff was actively resisting or attempting to evade arrest. *Id.* at 396. Though Defendants pay lip service to *Graham*, they do not engage in the requisite inquiry—which should perhaps come as no surprise, as here, all of the *Graham* factors evince in favor of Plaintiff (***or, at minimum, implicate factual disputes to be resolved by trial***).

First, while the charges were trumped up to cover up Defendants' unconstitutional actions, when looking at the actual evidence in the case, the severity of the crimes of which Mr. Musonza was accused was minor. Mr. Musonza was arrested for resisting [the] arrest (of a minor), obstruction of justice, and assaulting a police officer and all three charges were subsequently dismissed by the U.S. Attorney's office. *See Hall v. D.C.*, 867 F.3d 138, 157 (D.C. Cir. 2017) (low severity where charges involved felony theft); *Turpin v. Ray*, No. CV 19-2394 (RC), 2020 WL 1510412, at *8 (D.D.C. Mar. 30, 2020) (non-violent property crime).

To be sure, there was and is no evidence that Mr. Musonza obstructed with the investigation of a 14-year-old boy and it strains credulity that MTPD was even conducting any investigation at all because the videos show that they arrived on the scene, saw a kid running, grabbed his arms and tackled him with brute force. **SMFID at¶ 7-9**. There is definitely no evidence that Mr. Musonza was under arrest prior to being tased or that he assaulted Defendant Costanzo. Even though the record is incomplete as the parties have not completed discovery, there is enough evidence at this time to show that there is a genuine factual dispute as to whether Defendant Costanzo acted reasonably in tasing and arresting Mr. Musonza. There is no doubt that a jury must resolve this factual dispute.

Second, Mr. Musonza did not pose a threat to Defendants' safety. To the contrary, the evidence shows that Defendant Costanzo was a threat to Mr. Musonza's safety and the safety of others. To start, Mr. Musonza was unarmed. Moreover, the video shows that Mr. Musonza was standing on the other side of a bench at a very safe distance from Defendant Ditrick and Officer Ottmer as they detained the young boy. **Musonza Decl., Ex. 6 at 6**. The video also shows Mr. Musonza calming down the agitated crowd who was angered by the officers' brutal treatment of the boy. **SMFID at ¶11-12**. In fact, Defendant Ditrick admitted in his own written statement that there was an agitated crowd that formed around him and Officer Ottmer as they detained the young boy but that the group "maintained their distance and did not approach us." **Ditrick Statement, Ex. 3 at 249-50**. What he did not say is that the "group" consisted of the boy's friends and it was Mr. Musonza who can be seen keeping the group at bay. The video supports this. **SMFID ¶10-12**. As Mr. Musonza conversed with the officers they waved the young boys back and Mr.

12

Musonza then moved the boys away from the officers while they had their friend on the ground in a prone position.

Ditrick claimed Mr. Musonza "approached him" but he does not say how close Mr. Musonza was, or that he felt that his safety was threatened by Mr. Musonza's presence. What is more, the video evidence does not support the officer's one-sided version of events.

As the video shows, Mr. Musonza was having a conversation with the officers and there was no body language on the part of the officers showing that they felt threatened or that they were in distress. **SMFID ¶17-20**. Mr. Musonza was concerned about the boy's welfare and asked him questions about whether he needed medical care, to which Ditrick responded that the boy was fine. **Id. at ¶18**. Then it appears that the officers ask the young boy if he needed medical care—after Mr. Musonza inquired. **SMFID at ¶20**. Beyond that, Ditrick stood by and looked on and Ottmer radioed for transport assistance while Mr. Musonza helped calm down the youth nearby while a passenger kept his cell phone camera on the young boy and the officers. Mr. Musonza can be seen calmly engaging the Black gentleman as well. *Id.* **at 19.**

At least four other passengers turned to witness the incident, including Chem'ere Jones. At no point in time, between time stamps 9:03-11:47 did the officers appear to be in distress or danger due to Mr. Musonza's presence or that of anyone else. At 11:48- enters Defendant Costanzo whose gloved hand is seen shoving Mr. Musonza on his chest and then grabbing him under his rib cage while Mr. Musonza holds on to the bench. 11:55. **SMFID at ¶22-23**. The next thing shown is the Defendant shoving Mr. Musonza aggressively and

repeatedly into another passenger at time stamps 11:58-12:02. **SMFID at ¶¶23& 27**. Mr. Musonza is seen with his hands open and stretching his arms wide showing that he is unarmed and harmless. Despite these facts, the officer continues pushing him prompting Mr. Musonza to remove the officer's hands off of his person while telling him that he is in public space and that he is not doing anything wrong. By 12:05 Defendant Costanzo is already wielding his taser to which Mr. Musonza asks in shock with his hands open showing that he is unarmed "Are you gonna tase me?" **Ex. 6 at 11.**

What is clear is that at no point in time, prior to Defendant Costanzo escalating matters with his unconstitutional actions, did any officer on the scene threaten to arrest Mr. Musonza or tell him that he was interfering in any way—because he was not. *Id.* at 6-7. What is more, both Defendants were much larger than Mr. Musonza who stands about 5'6 and weighed less than 150 pounds. Defendant Costanzo is reportedly six feet tall, but appears to be taller, and 178 pounds. Interrogatory responses of Def. Constanzo, Ex. 2. Defendant Ditrick is reportedly 6 feet tall and 200 pounds, although he appears to be heavier than 200 pounds. Interrogatory responses of Def. Ditrick, Ex. 1. There is no evidence that Mr. Musonza posed a credible threat to anyone.

Third, there is absolutely no evidence that shows that Mr. Musonza was resisting arrest at any point in time. Indeed, Defendants' claim that Mr. Musonza was "resisting the arrest of a minor" **Def. Mot. at 9**. This makes no sense. First of all, there is no credible evidence in the record shows that Mr. Musonza demanded that the officers free the young boy. There is no evidence that Mr. Musonza was "interfering" with whatever alleged "investigation" MTPD was doing at the time. Indeed, the soundless video does not

indisputably show that the officers told Mr. Musonza to back away before Defendant Costanzo came on the scene and it certainly doesn't show that they attempted to arrest him before that time. Mr. Musonza notes that all of the false charges filed against him were dismissed by the US Attorney's Office. *But there is more.*

There is no evidence that Mr. Musonza was resisting his **<u>own</u>** arrest. Here, Mr. Musonza notes that when there is no probable cause for an arrest, a charge of "resisting arrest" cannot lie. *See Murphy*, 118 F.3d at 948 ("Since there was no warrant here, and the jury found no probable cause to arrest Murphy for assault or disorderly conduct, the officers were without authority to arrest Murphy for resisting arrest"). The video shows that Defendant Costanzo came onto the scene, apparently, unaware that things were calm. **SMFID at ¶22**. One of the officers even motioned to him to relax because everything was under control. *Id.* at 24. Instead, Defendant Costanzo immediately shoved Mr. Musonza who threw up his empty hands in the air to show Defendant Costanzo that he was unarmed, harmless and asked what the officer was doing and why he shoved him. **SMFID at ¶29**. Defendant Costanzo continued shoving Mr. Musonza backwards into another passenger to the point where Mr. Musonza almost fell and the passenger used his hands to hold Mr. Musonza up. **_Id._ at ¶¶25-27.** Defendant then began to tase Mr. Musonza repeatedly while onlookers screamed in shock and terror at the brutal incident as shown on the video footage of Chem'ere Jones.[4]

There was no basis for Defendant Constanzo to use his CEW on Mr. Musonza—at all. What the evidence shows is Defendant using an unreasonable and brutal level of force

---

[4] The footage with will be delivered to the court.

against an innocent passenger.  It was *after* being tased, that Defendant arrested Mr. Musonza and then lodged false charges against him to justify using excessive force.  At no point in time, did Mr. Musonza resist arrest.  Even if the evidence could be disputed, which it cannot, in viewing the facts in the light most favorable to Mr. Musonza, a reasonable jury could conclude that under the Graham factors, Defendants' use of force was excessive and violated §1983.

**B.  <u>Defendants' Statement of Material Facts Not in Dispute is Contradicted by the Video Evidence</u>**.

Defendants attempt to snip sections of the video footage out to support its self-serving version of the story that took place on June 22, 2019 is overcome by the actual footage captured by its own cameras, the video footage of a bystander <u>and</u> Plaintiff's version of events.  All told, in viewing the facts in the light most favorable to Mr. Musonza, the court should not grant summary judgment in favor of Defendants.  First, Defendants falsely assert that "Plaintiff notices Officers Ottmer and Ditrick with the juvenile and walks towards them as they are handcuffing the minor." **Def. SMFNID at¶ 27**.

**This is false.**  The video shows Plaintiff was minding his own business when he saw the police tackle a young boy to the ground.  **SMFID at ¶7**.  He saw the officers put their full weight on the young boy endangering the boy's life.  He also saw that they held the boy in a prone position for an extended period of time.  **SMFID ¶¶7-9**.  The boy's friends were yelling at the officers for their brutal treatment of the minor boy. **SMFID at ¶10.**  Mr. Musonza, concerned for the welfare of the boy and the temper of the crowd, asked the officers to put the boy on a nearby bench.  *Id.* **at ¶12**.  The officers did not tell Mr. Musonza

to move away or otherwise object to his instructions or his presence. In fact, the video evidence shows that they complied with his request. *Id.* at ¶13. Defendant's Statement of Material Facts Not in Dispute omits all of these facts.

The video evidence also shows that Mr. Musonza entreated the boy's friends to remain calm down. **SMFID at ¶11**. Defendants admit that an agitated crowd formed around them with their camera phones out, yelling at them as they detained the young Boy but that the group "maintained their distance and did not approach us." **Ex. 3 at 249-50.** However, they also assert that Mr. Musonza "approached" them. To the contrary, the video evidence shows that Mr. Musonza engaged the officers but did not get so close to them that he was interfering and he did not physically or verbally interfere with the arrest. **SMFID at ¶9-13.** The evidence shows that the officers gestured towards him and the boy's friends that the boy was fine as if no one had anything to worry about. **SMFID at¶ 16-17.** To be sure, the officers told the upset boys to step back as they approached their friend who was in custody, but once the officers saw Mr. Musonza managing them and advising them to calm down, the officers knew that he was no threat and began to converse with Mr. Musonza about placing the boy on a bench. **SMFID at ¶15**.

Throughout this interaction, the first responding officers never told Mr. Musonza that he was interfering in any way. Nor did they attempt to detain Mr. Musonza or even threaten to do so. Assuming that the officer's actually placed a call for backup, they did so because of the number of youth on the scene and the fact that they were angered by the officers' brutal treatment of their friend. It strains credulity that they called for backup because of Mr. Musonza, when viewing the facts in the light most favorable to him.

17

Second, Defendant's assert that "Officer Ottmer sounded out of breath and in distress." **Def. SMFND at 37**. If this is even true, it is likely because they used brute force to tackle a young boy and that was well before their interaction with Mr. Musonza. The video evidence does not show that either Ottmer or Ditrick were in distress at *anytime* during their interaction with Mr. Musonza. **SMFID 7-16; 21-22**.

Third, Defendant Costanzo's own statement is unsupported by the record. He claims that he observed three individuals surrounding the officers when he approached. That he advised the crowd to back up, and that "one individual did not back up and continued to yell at the officers." **Costanzo Statement, Ex. 4**. What is more, he claims that he asked Mr. Musonza if he was a parent or guardian of the minor and he stated "no." *Id.* He further stated that he again advised to back up – "squared off on me and continued to yell" "bumped his chest into me - knocking me back from my space." *Id.* This statement is pure fiction and not supported by the video evidence.

The video shows that Mr. Musonza maintained a safe distance so that he would not be perceived as a threat or obstructing their investigation and/or arrest. **SFMID at 16**. Once again, the video shows the young boy's friends approaching the officers angry about their friend's detention when Mr. Musonza continues to calm them down in an effort to de-escalate the situation. *Id.* **at 17.** To comfort the young boy, Mr. Musonza places his hand on his shoulder to console him so that he doesn't feel afraid or insecure. The video shows that at no point did the first responding officer ask Mr. Musonza to move back or refrain from consoling the young boy who was clearly calm and not aggressive. *Id.* **at 18.**

The video then shows Mr. Musonza speaking to the Black gentleman next to him and the gentleman's posture and demeanor was calm and friendly. Mr. Musonza even places his hand on the man's shoulder to show that he was not aggressive in nature or physically threatening to anyone within that vicinity. *Id.* **at 19.**

The video now shows that the crowd has calmed down and the officers have calmed down and the situation has been de-escalated to the point where the officer in the white shirt even taps the young boy's shoulder to see if he was doing okay. At no point in time, does Mr. Musonza appear to be interfering with the arrest, a threat to the officers or in the commission of a crime of any kind. Id. at 20. But then the atmosphere shifts when Defendant Constanzo rushes into the scene and immediately begins to shove Mr. Musonza. Let's break this scene down:

1. Defendant Costanzo escalates the entire scene when he rushes up to the Plaintiff and (without reasonable cause or justification under the circumstances) begins to violently shove him in his chest. **SMFID at 26-34.**

2. One of the officers with the detained minor (Ottmer) gestures to defendant to stand down because everything was under control. *Id.* **at 28-29.**

3. Mr. Musonza can be seen holding onto the bench to maintain stability and footing. *Id.* **at 29.**

4. **From no angle can Mr. Musonza be seen "chest bumping" Defendant Costanzo or anyone else.**

5. The Black gentleman was standing directly behind him so there was no room to move in the direction the officer was telling him to move in. **SMFID at 32-33.**

19

*6.* Defendant Costanzo clearly lacked any and all situational awareness because he is shoving him directly into the other Black passenger. *Id.*

7. Mr. Musonza decries the assault and says that he is in "public space" as he removes Defendant Costanzo's hands off his person. **SMFID at 31.**

8. Defendant Costanzo can see that Mr. Musonza is unarmed because at one point Mr. Musonza's arms are raised with his palms up while Defendant is facing him. **SMFID at 35.**

9. **At this point, the evidence does not show Mr. Musonza "chest bumping" Defendant or anyone else.**

10. Costanzo pulls out his taser and begins to tase Mr. Musonza, which leads bystanders to begin screaming and yelling. ***See* Neka Phelps video**.

11. No one was screaming or yelling in this manner prior to Defendant Costanzo coming onto the scene. His actions literally escalated matters from relatively calm to chaotic.

12. Mr. Musonza was placed in handcuffs and arrested.

13. He was charged with assaulting a police officer, obstructing justice and resisting arrest.

Defendants' rely on *Lash vs. Lemke* in support of their argument that Mr. Musonza's version of events is completely contradicted by the video evidence. Their reliance on this case is amiss. In *Lemke,* the arrestee confronted the police as they were in the process of posting notices at an encampment. He not only yelled profanities at them but he tore the notices down and the officers had to ask him to stop. *See Lemke,* 415 U.S. App. D.C. 158,

160-61, 786 F.3d 1, 3-4 (2015). As he retreated through the encampment, the officers followed him and seized him. *Id.* He actively resisted being arrested and even refused to enter into a police car after he was arrested. *Id.* He was only tased because he actively resisted arrest after he committed an actual offense of disorderly conduct. Moreover, he was tased one time. Mr. Musonza's case is completely different.

The evidence shows that Defendant Costanzo was the first aggressor in this encounter. He came onto the scene violently shoving Mr. Musonza in his chest repeatedly and into another passenger. Mr. Musonza was not yelling profanities at the officers or doing anything illegal. He was tased multiple times and then arrested and did not resist going to jail where he spent the next two days. **Ex. 6 at 12**. Therefore, unlike *Lemke*, it cannot be said that the video established "to a certainty" that what the plaintiff said was not true. *Lemke*, 786 F.3d at 7. ; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) (invoking video that "quite clearly contradicts the version of the story told by respondent").

Moreover, while Defendants' contend that they made various statements to Mr. Musonza, the videos they produced are soundless. Court have held that where the video does not contain audio and where there is a factual dispute as to the underlying use of force, summary judgment is not proper. *See Fenwick v. Pudimott*, 778 F.3d 133, 137-78. (D.C. Cir. 2015)(the D.C. Circuit considered a video that was "blurry and soundless," and concluded that the videotape "provides no ready answers to the factual dispute and does little to affect our analysis." *Id.*; see also McKoy, 2021 WL 270397 at *4–5. This Court should follow suit. As the court views the actual footage, the Court will conclude that the Defendants' version of events is not supported by the evidence and that a reasonable jury

could conclude that Defendants are liable for violating Mr. Musonza's Fourth Amendment Rights.

**V.       Defendants Are Not Entitled to Qualified Immunity On These Facts**

The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231(2009). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Young v. D.C.*, 322 F. Supp. 3d 26, 35 (D.D.C. 2018) (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). Defendants' argument is premature at this stage, as there exist significant disputes of material fact that require resolution prior to an analysis of qualified immunity. If, at trial, the jury credits Plaintiff's version of what transpired, then Defendants will not be entitled to qualified immunity, as Defendants' actions will have violated Mr. Musonza's clearly established rights under the Fourth Amendment.

**A. Factual Disputes Preclude a Decision on Qualified Immunity at the Summary Judgment Stage.**

A finding of qualified immunity is inappropriate at this stage. It is well-settled that when "the material facts underlying a defendant's claim of qualified immunity are in dispute, it is impossible for the court to determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law." *Flythe v. D.C.*, No. CV 10-2021 (RC), 2016 WL 4506965, at *8 (D.D.C. Aug. 26, 2016); *see also Johnson*

*v. D.C.,* 528 F.3d 969, 977 (D.C. Cir. 2008). As discussed *supra* Section IV, there are genuine disputes of material fact as to whether Defendant Costanzo acted with excessive force and without probable cause, and thus the Court must defer a decision on qualified immunity. In *Johnson*, the plaintiff filed suit under § 1983 alleging that he had been kicked by police officers after he had been subdued. 528 F.3d at 977. The district court had granted the defendants summary judgment based on qualified immunity, but the Court of Appeals reversed. It found that the question of whether the plaintiff's "prone position was threatening or suggested escape . . . can only be resolved by evaluating the conflicting testimony" of the plaintiff and the officer at trial. *Id.* Johnson applies squarely here, and the Court should find that disputed facts preclude a finding of qualified immunity at summary judgment. Indeed, in cases involving similar fact patterns as this one, courts regularly deny qualified immunity arguments at the summary judgment stage.

In *Halcomb v. WMATA,* the plaintiff alleged that the WMATA officer violated her constitutional rights by falsely arresting her on charges of fare evasion and by using excessive force to effect the arrest. 526 F. Supp. 2d at 22–23. Defendants attempted to invoke qualified immunity at summary judgment, but the court rejected the argument[5]. It noted that the plaintiff disputed the officer's account of the events leading up to the arrest as well as his account of the amount of force he used. *Id.* at 21. It held that "the question of what actually transpired between [Plaintiff and Defendant] is unavoidably a question of fact— and one that, at least here, prevents the Court from deciding the legal questions before

---

[5] Plaintiff in this case prevailed at trial.

trial." *Id.*; *see also Halcomb v. Woods*, 767 F. Supp. 2d at 141 (denying qualified immunity even after trial); *Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 172 (D.D.C. 2018) (citing cases for proposition that "qualified immunity cannot be decided before trial if disputed issues of fact regarding the reasonableness of an alleged seizure are present,"); *Flythe*, 2016 WL 4506965, at *8 (no qualified immunity at summary judgment because "reasonable minds could differ as to the import of the evidence").

Here, Defendants' papers make it clear that they are relying on their interpretation of video evidence that in no way "wholly contradicts" Mr. Musonza's version of events. Therefore, this court should deny qualified immunity at this stage.

**B. <u>On Plaintiff's Facts, Defendants Are Not Entitled to Qualified Immunity Because Their Constitutional Violations Violated Clearly Established Law</u>**.

For the reasons mentioned in Section A of this memorandum of law, the Court should defer ruling on qualified immunity until factual disputes are resolved. Following trial, if the jury credits Plaintiff's version of the facts, the Court will have sufficient facts to find that Defendants are not entitled to qualified immunity because Defendants (1) engaged in constitutional violations (2) that were "clearly established [such that] it would be clear to a reasonable officer that his conduct was unlawful." *Saucier*, 533 U.S. at 202. As described *supra* Section IV, Defendants' actions in shoving, tasing and arresting Mr. Musonza without probable cause are sheer violations of the Fourth Amendment. These constitutional violations were clearly established under the law.

A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct.

2042, 2044, 192 L. Ed. 2d 78 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)). "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or [D.C.] Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Doe v. District of Columbia*, 796 F.3d 96, 104, 418 U.S. App. D.C. 96 (D.C. Cir. 2015) (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Campbell v. District of Columbia*, 245 F. Supp. 3d 78, 85 (D.D.C. 2017).

First, Mr. Musonza analyzes whether Defendants engaged in constitutional violations. Defendant Costanzo violated Mr. Musonza' s Fourth Amendment rights when he violently shoved him and deployed his taser on him. While there isn't much law in this Circuit, the Fourth Circuit has concluded that "[d]eploying a taser is a serious use of force," that is designed to "inflict[] a painful and frightening blow." *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902 (4th Cir. 2016) (*quoting Orem v. Rephann*, 523 F.3d 442, 448 (4th Cir. 2008)). For these reasons, it "may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser." *Id.* at 909. Mr. Musonza notes that he was not an "immediate safety risk" that necessitated the sue of a taser to cure it when Defendant Costanzo tased him.

In *Estate of Amrstrong*, the court went on to explain that "[t]he subject of a seizure does not create such a risk simply because he is doing something that can be characterized as resistance-even when that resistance includes physically preventing an officer's

manipulations of his body." *Id.*   *See also Yates v. Terry*, 817 F.3d 877, 886 (4th Cir. 2016)(officer tasing Yates twice at a gas station "when he was neither a dangerous felon, a flight risk, nor an immediate threat to Terry or anyone else...constituted excessive force in violation of Yates' Fourth Amendment rights."

These cases serve as guideposts for this Court's analysis.  Mr. Musonza was not a flight risk or a dangerous felon.  The video evidence shows that he was not an immediate threat to Defendants or anyone else. Yet, Defendant Costanzo tased him multiple times. At best, Mr. Musonza removed Defendant Costanzo's hands from his chest each time he aggressively shoved, at times shoving him into another passenger as if he wanted to fight Mr. Musonza.  A reasonable officer would not have behaved in this manner under these circumstances, particularly when probable cause had not been established.   Here, Defendant deployed his taser four times.   Under these circumstances, it is clear that Defendant Constanzo violated Mr. Musonza's Fourth Amendment rights.

Defendants cite *Campbell vs. District of Columbia* to support their argument that "there is no clearly established right to be free from the force used by Defendants" (**Def. Mot. at 22**) but that is not the proper inquiry under the qualified immunity doctrine. The question is whether a reasonable official would have understood that coming onto a scene and immediately shoving, tasing and arresting a person without any information as to whether a crime was afoot was a violation of that person's constitutional rights.  The answer is "yes." *Campbell* does not help Defendants.

First, *Campbell* involved an alleged narcotics-related offense. The Court denied qualified immunity at the summary judgment stage because it found that the officers may have violated Campbell's constitutional rights by stopping him in the first place. Here, Mr. Musonza was not stopped by the police and the record does not support any assertion that there was not reasonable articulable suspicion that he committed a crime before he was arrested. Second, the Court considered the "particular facts and circumstances" of the case when considering whether the officers used excessive force against Campbell. The Court noted that Campbell, at 6'6" and 230 pounds, towered over the arresting officer who at 5'10", was unable to control Campbell using ordinary tactics, such as holding him by the waist. The officer only escalated his use of force when Campbell tried to flee and another officer intervened because he feared for his partner's safety. *Campbell*, 245 F. Supp. 3d at 89. That is not the case here.

Unlike the plaintiff in Campbell, Mr. Musonza was much smaller than Defendants at 5'5 and 150 pounds compared to Defendants who were both at least 6 feet tall and 178 pounds and 200 pounds respectively at the time of the incident. Exs. 1 and 2. Mr. Musonza was conversing with the officers while keeping the young boy's friends at bay prior to Defendant Costanzo coming on to the scene and violently shoving him right before tasing him. The evidence shows that Mr. Musonza held onto a bench to keep from falling and removed Costanzo's hands from his person while Costanzo continued to antagonize him by shoving him in his chest. None of these facts existed in Campbell. Moreover, there was no evidence that Mr. Musonza committed a crime before Defendant Costanzo decided to use his CEW on him—and discharge it multiple times. *Campbell* is wholly inapposite.

All told, Defendant Costanzo did not have probable cause to arrest Mr. Muzona for Assaulting a Police Officer, Resisting Arrest and Obstruction of Justice as discussed *supra* Section IV, and Mr. Musonza has a clearly established right to be free from false arrest and excessive force. *See Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) (citing *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975)). In the qualified immunity context, the "right" at issue is defined as the right to be free from arrest without probable cause. *See, e.g., Dormu*, 795 F. Supp. 2d at 19 (§ 1983 false arrest case involving arrest for disobeying a police officer); *see also Mazloum v. D.C. Metro. Police Dep't*, 576 F. Supp. 2d 25, 39-40 (D.D.C. 2008) (qualified immunity denied because "it is well-established that an officer cannot arrest an individual without probable cause"); *Hall*, 867 F.3d at 156.

In this case, a reasonable officer would have known that he cannot just pull out his taser and begin tasing a bystander who is not only not committing a crime, but who is not resisting a lawful arrest. Where does the evidence indisputably show that Mr. Musonza was resisting arrest before or after Defendant Costanzo pulling out his CEW? What indisputable evidence supports Defendants' claim that Mr. Musonza was obstructing justice before or after Defendant Costanzo began tasing him? What indisputable evidence supports Defendants' claim that Mr. Musonza assaulted any police officer on the scene? Even if Mr. Musonza's grabbing Defendant Costanzo's wrist as he was being shoved could be seen as an APO, the court must view the evidence in the light most favorable to Mr. Musonza who attested that the only thing he protested was the officer violently shoving him into another passenger and to the point where he nearly fell so had to grab a hold of the bench. **SMFID at ¶25.**

What the evidence shows is an officer whose actions unnecessarily escalated a situation that was neither life-threatening nor dangerous when he arrived at the scene, in part because Mr. Musonza de-escalated the crowd while the officers detained the young boy. There is no way that a reasonable officer would have rushed onto the scene shoving Mr. Musonza into another passenger, lacking any situational awareness about what was going on by the time he arrived and not communicating with his officers or Mr. Musonza so that he could take the proper course of action. Defendant Costanzo immediately put his hands on Mr. Musonza and the scene turned chaotic from there. Had Defendant acted reasonably, he would not have violated Mr. Musonza's rights or falsely arrested him on trumped up charges to cover up his unconstitutional violations.

**VI.**     **Under _Thompson vs. Clark_ Plaintiff Meets the Elements of Malicious Prosecution**

Defendants' papers avoid the 2022 Supreme Court case _Thompson v Clark_, 142 S. Ct. 1332 (2022) and instead cite a case that is more than 100 years old for the proposition[6] that Mr. Musonza cannot show that the charges Defendants lodged against him did not end with a favorable termination because they were dismissed "_nolle prosequi_" and there were no institution of charges. In light of _Thompson_, however, Defendants' argument fails.

Thompson was arrested and charged with obstructing governmental administration and resisting arrest after refusing to allow officers to enter his home without a warrant as they were responding to a call that he had sexually abused his infant child. Unbeknownst to Thompson, the 911 call was placed by a mentally ill relative. Thompson was detained for

---

[6] All of the other cases cited by Defendants pre-date _Thompson_ and cannot be reconciled with current precedent.

two days before being released. The charges against Thompson were dismissed before trial without any explanation by the prosecutor or judge. After the dismissal, Thompson filed suit under 42 U. S. C. §1983, alleging several constitutional violations, including a Fourth Amendment claim for malicious prosecution. *Thompson*, 142 S. Ct. at 1335-36. In the Second Circuit, one could not sustain a claim for malicious prosecution unless the dismissal of the underlying charge was accompanied by some evidence innocence. The Supreme Court rejected that standard: "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction. Thompson satisfied that requirement in this case." *Id.* at 1335.

*Thompson* is instructive in this case. Here, charges were instituted against Mr. Musonza and he was detained. Just like *Thompson*, the prosecutor dismissed the charges against Musonza and he was released. Mr. Musonza has set forth evidence showing that there was no probable cause for the arrest as discussed *supra* IV. Mr. Musonza can show that there was malice in pressing charges against him because Defendants had no basis to use force against him or arrest him in the first place. Defendant Costanzo's actions were aggressive—escalating a relatively calm situation where no one had been injured or was at risk of being injured—and tased an unarmed, innocent man four times when it was the man who kept the youth calm after the officers tackled and detained their 14-year-old friend. In the end, Defendants' charges against Mr. Musonza ended without a conviction, therefore his claim of Malicious Prosecution Stands.

**VII.     Plaintiff's Assault & Battery Claims Must Go To a Jury.**

Under D.C. law, an assault is "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim," while a battery is "an intentional act that causes a harmful or offensive bodily contact." *Etheredge*, 635 A.2d at 916 (internal quotation marks omitted). As a threshold matter, it is undisputed that Defendant Costanzo engaged in actions that would constitute battery.  **Def. Mot. at 26.** Defendants instead argue that their actions fall under the protection of qualified privilege.  Their arguments fail.

First, Defendants are not entitled to qualified privilege at this juncture. "A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." *Etheredge*, 635 A.2d at 916 (internal quotation marks omitted). Although the standards are similar, the qualified privilege standard is more plaintiff-friendly than the § 1983 qualified immunity standard. By comparison to the more onerous objective qualified immunity test under § 1983, "the test for qualified privilege in an assault and battery suit is both subjective and objective: the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation." *Scales v. D.C.*, 973 A.2d 722, 730 (D.C. 2009).

Accordingly, Plaintiff prevails on the question of qualified privilege for all of the same reasons he prevails on the question of qualified immunity: that an objectively

reasonable officer in the same situation would have understood the force that Defendant used was excessive. *See supra* **Section V.B.**

Plaintiff can also prevail on his assault and battery claims because the jury may find that Defendants subjectively believed that the actions constituting assault and/or battery went beyond what was "necessary." Although Defendants—predictably—have testified that they subjectively believed their actions to be reasonable, there are sufficient facts in the record from which a jury could decline to credit this testimony. For example, a reasonable jury could conclude that Defendant Costanzo did not have a subjective belief that his actions were reasonable, based on the conflicts between his written statement and the video footage which show him shoving Mr. Musonza with his taser in his left hand and as Mr. Musonza protests the officer shoving him, Defendant begins to tase Mr. Musonza. Defendant's written statement, however, says that he had a conversation with Mr. Musonza, that Mr. Musonza committed a battery against him and was relentlessly advancing toward him in an aggressive stance despite any commands he was given. *See supra* **at 19-20**. In his written statement he said:

"I ask him if he was a parent or guardian of the individuals that were stopped and he stated no that he did not know them. I again advised him to back up from the scene and he squared up towards me still yelling in my face and bumped his chest into me knocking me back from my space. I attempted to push the individual back from the scene and he pushed me while advancing towards me." **Ex. 4 at 306**.

A jury would likely not credit Defendant Costanzo's testimony on this point because it not only conflicts with the video evidence but it appears to be the product of an effort to justify a use of force that Defendant knew was unreasonable at the time he used it against Mr. Musonza. Plaintiff has established genuine disputes of material fact that

would allow a jury to find that Defendants assaulted and battered Plaintiff and that their assault and battery of Plaintiff was not privileged. Therefore, Plaintiff's assault and battery claims must go to a jury.

## VIII. Plaintiff's False Arrest Count Must Go to a Jury

Mr. Musonza has extensively argued that there was no probable cause for his arrest. *See supra* **at 16-17**. He contends here, too, that when there is no probable cause for an arrest, subsequent charges cannot lie. *See Murphy*, 118 F.3d at 948 ("Since there was no warrant here, and the jury found no probable cause to arrest Murphy for assault or disorderly conduct, the officers were without authority to arrest Murphy for resisting arrest"). Based on the conflicting testimony in the case, this count must proceed to a jury.

## CONCLUSION:

For all of these reasons, Defendants are not entitled to summary judgment. Although record evidence plainly shows that a reasonable jury could find in favor of Plaintiff on her federal and state common law claims, Defendants' brief presents a version of events that completely ignores the portions of the record that do not favor them. Moreover, precedent in this circuit makes clear that qualified immunity cannot attach to Defendants' actions, and the remainder of Defendants' arguments fail as a matter of law. Plaintiff respectfully requests that Defendants' Motion for Summary Judgment be denied in its entirety.

WHEREFORE, Plaintiff respectfully ask the Court to deny Defendants' Motion for Summary Judgment.

Dated: June 14, 2023

Respectfully Submitted,

/s/Yaida O. Ford
Yaida O. Ford, Esq.
FORD LAW PROS, PC
1001 L Street, SE
Washington, D.C. 20003
Tel:(202) 792-4946
Fax: 202-827-7881
yford@fordlawpros.com
*Counsel for Plaintiff*